**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Defendant*
*Pacific Indemnity Insurance Company*

**FILED**
DISTRICT COURT OF GUAM
AUG 1 1 2006
**MARY L.M. MORAN**
**CLERK OF COURT**

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY of PITTSBURGH, PA. <br><br> Plaintiff, <br><br> vs. <br><br> JOHN D. QUERRY, AMBYTH SHIPPING and TRADING, INC. dba AMBYTH TRUCKING and PACIFIC INSURANCE COMPANY <br><br> Defendants. | CIVIL CASE NO. 06-00017 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PACIFIC INDEMNITY INSURANCE COMPANY'S MOTION TO DISMISS** |

ORIGINAL

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS ALLEGED IN THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  STANDARDS FOR A 12(B)(6) MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  SUBROGATION AND DIRECT ACTION CLAIMS MUST BE
       DISMISSED AGAINST PACIFIC INDEMNITY . . . . . . . . . . . . . . . . . . . . . . . . . 5

       1.  The National Union Policy covered the Third-Party Claims
          and Expenses Resulting from the Tanker Truck Accident . . . . . . . . 6

       2.  Ambyth and Query are "Insureds" under the
          National Union Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       3.  An Insurer is Barred by the "AntiSubrogation Rule"
          from Bringing Either Equitable or Contractual Subrogation
          Against Its Insured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       4.  The Anti-Subrogation Rule Applies Even When There
          is a Separate Agreement to Indemnify Against the Loss . . . . . . . . . . . 13

       5.  The AntiSubrogation Rule Applies to Actions
          Between Insurers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       6.  The National Union Complaint Must be Dismissed . . . . . . . . . . 17

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

Page

## Cases

*American General Fire and Cas. Co. v. Truck Ins. Exchange*,
    660 F. Supp. 557 (D. Kan. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 15

*Burlington Ins. Co. v. Oceanic Design & Const., Inc.*,
    383 F.3d 940 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Capital Insurance & Surety Co. v. Kelly*,
    361 F.2d 567 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Carolina Casualty Ins. Co. v. Underwriters Ins. Co.*,
    569 F.2d 304 (5th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*ELRAC, Inc. v. Ward*,
    748 N.E.2d 1, 8-9, 724 N.Y.S.2d 692 (N.Y. 2001) . . . . . . . . . . . . . . . . . . 11

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
    77 Cal. Rptr. 2d 296 (Cal. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . 11

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . 5

*Insurance Co. of North America v. Federated Mut. Ins. Co.*,
    518 F.2d 101 (6th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jefferson Ins. Co. of New York v. Travelers Indemnity Co.*,
    703 N.E.2d 1221, 681 N.Y.S.2d 208 (N.Y. 1998) . . . . . . . . . . . . . . 13, 16, 17

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 4

*Pennsylvania General Ins. Co. v. Austin Powder Co.*,
    502 N.E.2d 982, 510 NY.S.2d 67 (N.Y. 1986) . . . . . . . . . . . . . . . . . . . . 14

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Scheuer v. Rhodes*,
    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) . . . . . . . . . . . . . . . . . . 4

Case 1:06-cv-00017     Document 16     Filed 08/11/2006     Page 3 of 23

*Takahashi v. Loomis Armored Car Serv.*,
625 F.2d 314 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Travelers Indem. Co. v. LLJV Development Corp.*,
643 N.Y.S.2d 520 (N.Y.A.D. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tri–State Ins. Co. of Minnesota v. Commercial Group West, LLC*,
698 N.W.2d 483 (N.D. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Truck Ins. Exchange v. County of Los Angeles*,
115 Cal. Rptr. 2d 179 (Ct. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 12

## Rules

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

## Statutes

22 G.C.A. § 18305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Other Authority

16 Lee R. Russ, Couch on Insurance, § 224:2 (3rd ed. 2006) . . . . . . . . . . . . . . . 14
16 Lee R. Russ, Couch on Insurance, § 224:4 (3rd ed. 2006) . . . . . . . . . . . . . . . 14

# I. INTRODUCTION

In what is essentially a dispute between Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), and Defendant Pacific Insurance Company ("Pacific Indemnity") over the apportionment of liability for funds paid out in the settlement of third-party claims, National Union has sought to resolve this dispute by suing two of its insureds, Defendants Querry and Ambyth, by way of subrogation, and Pacific Indemnity under Guam's direct action statute for the liability of the two insureds. National Union's claims are barred by the antisubrogation rule precluding an insurer's claims against its insureds by way of subrogation.

Pacific Indemnity seeks the dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure based on National Union's failure to state claims upon which relief can be granted. The following memorandum of points and authorities is submitted in support of the motion.

# II. FACTS ALLEGED IN THE COMPLAINT

The Complaint was filed in this matter on June 26, 2006. National Union's Complaint alleges causes of action against Defendants John D. Querry ("Querry"), Ambyth Shipping & Trading Inc., dba Ambyth Trucking ("Ambyth") and Pacific Indemnity. The Complaint alleges eight claims, all arising out of payments National Union made, or will make, to third-party claimants, and expenses National Union incurred, or will incur, arising out of a Mobil tanker truck accident that occurred in the Village of Umatac, Guam on February 10, 2005 ("Accident"). National Union asserts that it made these payments or incurred these expenses under an insurance policy it issued to Mobil Oil Guam, Inc. ("Mobil"). *See* Complaint ¶¶ 28,

1

33, 36, 38. In the first six claims of the Complaint, National Union seeks reimbursement as a subrogee of Mobil, the owner of the tanker truck. In the seventh claim, National Union seeks reimbursement for amounts it paid under its policy. National Union also asserts a direct action claim (Claim 8) against Pacific Indemnity to recover amounts for which Querry, and or, Ambyth are found to be liable, and which fall within the limits of the commercial auto liability policy Pacific Indemnity issued to Ambyth.

The Complaint contains the following factual and legal allegations, relevant to the present motion. Mobil operates gasoline service stations on Guam. Ambyth is a business which provides cargo handling and trucking services, *Id.* at ¶ 9, and Querry was a truck driver employed by Ambyth. *Id.* at ¶10. In September 2004, Mobil and Ambyth entered into a Transportation Services Agreement, pursuant to which Ambyth agreed to provide drivers to transport and deliver fuel using Mobil's trucks. *Id.* at ¶¶ 11-12. On February 10, 2005, Querry, while employed by Ambyth, was assigned to drive a Mobil tanker truck carrying about 6,000 gallons of fuel. *Id.* at ¶ 16. While driving Mobil's tanker truck Querry was involved in an accident in which the truck tipped over, causing the fuel to spill out and catch fire, which resulted in physical injury and property damage. *Id.* at ¶¶ 16, 18, 19. National Union further alleges that Querry was acting in the course and scope of his employment with Ambyth at the time of the Accident, *Id.* at ¶17.

National Union claims that, at the time of the Accident, it insured Mobil under a Foreign Automobile Policy, *Id.* at ¶ 28, and that it has paid $240,172.41 to, or on behalf of, third party claimants, in connection with the Accident. *Id.* at ¶ 36, and $17,248.29 in expenses. *Id.* at ¶38. National Union asserts that, under the Transportation Services Agreement, and the doctrine of

2

*Respondeat Superior*, Ambyth is jointly and severally liable with Querry for any and all bodily injury and property damage, and damages claims, resulting from Querry's actions in connection with the Accident. *Id.* at ¶ 22.

National Union claims that Amyth and Querry were covered by an automobile policy issued by Pacific Indemnity, *Id.* at ¶ 26, and that National Union is entitled to, but has not received, reimbursement from Querry, Ambyth and Pacific Indemnity. *Id.* at ¶ 36.

Of the eight claims set forth in the Complaint, Claims 1 through 6 allege the following causes of action, respectively: Equitable Subrogation; Contractual Subrogation; Subrogation to Mobil's Right of Contribution; Future Claims Subrogation; Subrogation for Expenses; and Subrogation for Future Expenses. *See id.* at ¶¶ 39-51. These subrogation claims seek reimbursement from Defendants Querry and Ambyth for payments made (and to be made) and expenses incurred (and to be incurred) by National Union under the policy National Union issued to Mobil. National Union's first six claims are premised on National Union's alleged right of subrogation to Mobil's rights to recover against Querry and Ambyth for their fault in causing the accident. Claim No. 7, *Id.* at ¶¶ 52-55, although couched in terms of a third-party beneficiary claim, is in fact a subrogation claim expressed in a different manner since the insurer (National Union) is seeking reimbursement from its insureds for amounts National Union paid under its policy. National Union also asserts a direct action claim (Claim 8) against Pacific Indemnity to recover amounts for which Querry and, or, Ambyth are found to be liable, and which fall within the limits of a commercial auto liability policy Pacific Indemnity issued to Ambyth.

3

## III. ARGUMENT

National Union's subrogation claims, Claims 1 through 6, and, Claim 7 which is less explicitly expressed as a subrogation claim, but a subrogation claim nonetheless, as well as its direct action claim against Pacific Indemnity, Claim 8, must be dismissed because they are barred by the rule that an insurer cannot bring a subrogation claim against its insured.

### A. STANDARDS FOR A 12(b)(6) MOTION

FRCP 12(b)(6) authorizes dismissal for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).[1] Dismissal under Federal Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Claims asserted in violation of the antisubrogation rule may be dismissed under Rule 12(b)(6) for failure to state a claim. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.* 658 F. Supp. 775, 781 (N.D. Ill.1987) (finding that the counterclaims asserted by the insurer violated the antisubrogation rule, and dismissing the claims with prejudice on the ground that

---

[1] Though it appears obvious, of course the Plaintiff's version of the facts is accepted as true only for the purpose of the present motion to dismiss. *Vacuum Indus. Pollution, Inc. v. Union Oil Co. of California*, 764 F.Supp. 507, 510 n.1 (N.D. Ill. 1991) ("It bears repetition that these are the facts according to VIP, accepted as true only for the purpose of defendants' motions to dismiss."), *aff'd* 958 F.2d 375 (7th Cir. 1992)).

4

"Insurers' Counterclaim against Continental and Individual Defendants fails to state a claim upon which relief can be granted.").

In ruling on the motion, the Court may consider the numerous documents attached to the Complaint without converting the motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ("A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment.").

This diversity action is governed by Guam law. It appears that the issues raised in this motion to dismiss are issues of first impression in Guam, and this Court, sitting in diversity, must use its best judgment to predict how the Guam Supreme Court would decide these issues. *Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, "must use [its] best judgment to predict how the Hawaii Supreme Court would decide [the] issue." ") (quoting *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir.1997)). "'In doing so, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions.'" *Ibid.* (quoting *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980)).

## B.     SUBROGATION AND DIRECT ACTION CLAIMS MUST BE DISMISSED AGAINST PACIFIC INDEMNITY

Claims 1 through 7 of the Complaint are claims against Ambyth and Querry based on National Union's alleged rights as a subrogee to Mobil's claims against Ambyth and Querry for payments by Mobil, both past and future, of third party claims arising from the Accident. Claim

5

8 of the Complaint is a direct action claim against Pacific Indemnity for payment of any judgment against Ambyth or Querry up to policy limits of the Pacific Indemnity Policy.

National Union specifically alleges that its entitlement to recover against Pacific Indemnity in a direct action suit is pursuant to, among other things, "the subrogation provisions of the National Union policy." Complaint, ¶ 58.

As will be discussed on more detail below, the law is settled that an insurer cannot pursue a subrogation claim against its insured. This "antisubrogation" rule also applies to bar subrogation claims by one insurer against another insurer.

1.    **The National Union Policy covered the Third-Party Claims and Expenses Resulting from the Tanker Truck Accident.**

In the Complaint, National Union concedes that its policy covered the third-party liability claims arising out of the Accident. Complaint, ¶ 28. Coverage D of the Insuring Agreements in the National Union Policy states the scope of coverage for bodily injury liability. Coverage D provides in relevant part that National Union agrees:

> To indemnify the insured for all sums which he shall become legally obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

National Union Policy, Insuring Agreements, Coverage D (Complaint, Exhibit 6).

2.    **Ambyth and Querry are "Insureds" under the National Union Policy.**

From the Complaint and the documents incorporated into and attached to the Complaint, it is established beyond doubt that Querry and Ambyth are "insureds" under the National Union policy. The National Union Policy defines "insured" as follows:

> **IV. Definition of Insured:** With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured"

6

includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.

National Union Policy, Insuring Agreements, IV (Complaint, Exhibit 6). Mobil is the named insured in the National Union Policy, and the Tanker Truck operated by Querry was a covered automobile. *See* National Union Policy, Declarations & Endorsement No. 1 - Schedule of Vehicles (Complaint, Exhibit 6).

National Union's allegations leave no doubt that Amyth and Querry were operating the Mobil tanker with permission. As alleged in the Complaint, Mobil entered into a Transportation Services Agreement with Ambyth, whereby Mobil hired Ambyth to deliver fuel, using Mobil's tanker trucks for such deliveries. Complaint, ¶ 12. Specifically, the Complaint alleges that under the Transportation Services Agreement between Mobil and Ambyth, Ambyth agreed to "provide MOBIL with manpower services, while using designated MOBIL-owned bulk fuel tanker trucks, to transport and deliver MOBIL bulk fuel products, on behalf of MOBIL, to and from certain MOBIL designated locations on Guam." *Id*. As further alleged in the Complaint, "[w]hile operating the Tanker Truck, Defendant QUERRY was acting within the course and scope of his employment with Defendant Ambyth. More particularly, Defendant QUERRY was under instructions form Defendant AMBYTH to transport and deliver MOBIL bulk fuel products, in accordance with the Transportation Services Agreement" *Id*. at ¶ 17.

National Union's allegations leave no doubt that Querry was an insured under the National Union policy. The Complaint alleges that Querry was driving Mobil's tanker truck and delivering fuel pursuant to the permission granted to Ambyth under the Transportation Services Agreement. *Id*. at ¶ 17. This falls squarely under the definition of "insured", which is defined

7

in the policy as "any person while using the automobile . . . provided the actual use of the automobile is by the named insured or with his permission." On the night of the Accident, Querry was an "insured" under the National Union policy. National Union Policy, Insuring Agreements, IV (Complaint, Exhibit 6).

The Complaint leaves no doubt that Ambyth was also an insured under the National Union policy. National Union alleges that, under the Transportation Services Agreement, Ambyth contracted with Mobil to provide Mobil with "manpower services, while using designated MOBIL-owned bulk fuel tanker trucks, to transport and deliver MOBIL bulk fuel products." Complaint, ¶ 12. National Union further alleges that Querry's operation of the Tanker Truck was pursuant to instructions from Ambyth in accordance with the Transportation Services Agreement. Complaint, ¶ 17. In addition to persons using the insured automobile, an "insured" under the National Union policy includes any "organization *legally responsible* for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." National Union Policy, Insuring Agreements, IV (Complaint, Exhibit 6). This places Ambyth under the umbrella of National Union's policy as an "insured." This provision of the National Union policy, extending the definition of insured to "permissive users," is commonly used, and is characterized as an "omnibus clause." See *American General Fire and Cas. Co. v. Truck Ins. Exchange*, 660 F. Supp. 557, 568 (D. Kan. 1987) (referring to the "omnibus or 'permissive user' clause"). "The omnibus clause contained in automobile liability insurance policies ordinarily employs language that provides coverage for any person "legally responsible" for the use of the vehicle insured, provided the actual use of the automobile is with the named insured's permission or consent." 8 Lee R. Russ, *Couch on Insurance*, § 111:40 (3rd

8

ed. 2006). It is recognized that in the context of an omnibus clause, where an employer is responsible under a under a respondeat superior theory, the employer is legally responsible, vicariously, for the use of the automobile by the employee, and is therefore an insured under the omnibus clause which extends coverage to those legally responsible for the use of the automobile with permission of the named insured. *See Insurance Co. of North America v. Federated Mut. Ins. Co.*, 518 F.2d 101, 103 (6th Cir. 1975).

In *Insurance Co. of North America v. Federated Mut. Ins. Co.*, 518 F.2d 101 (6th Cir. 1975), the insurer of a trailer, having settled a claim, brought an action for contribution against the insurer of a tractor. *Insurance Co. of North America*, 518 F.2d at 102. The tractor had been rented by its owner to haul cargo belonging to the corporation that had leased the tractor from the owner. *Id.* The owner of the tractor had an insurance policy on the tractor which

> defined "insured" in relevant part as follows:

> . . . (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and . . . also includes any person while using the automobile; and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

*Id.* at 102-03.

Following a fatal accident involving the tractor and trailer while the tractor was being leased, the insurer of the trailer defended and eventually settled the action brought by the widow of the decedent. *Id.* at 102. The trailer's insurer then claimed that because the corporation that had leased the tractor from its owner was an "organization legally responsible for the use" of the tractor, the leasing corporation was an additional insured under the policy. *Id.* at 103. The

9

owner's insurer argued, among other things, that the driver, not the corporation, was responsible for the use of the tractor. *Id.* The court rejected this argument, holding, in relevant part, that:

> In Tennessee, an employer is responsible for the torts committed by its employee acting within the scope of his employment. *Leeper Hardware Co. v. Kirk,* 58 Tenn.App. 549, 434 S.W.2d 620, 623 (1968). The district court determined, and its determination is supported by the record, that Hayes was an employee of Brazil Gin, acting within the scope of his employment at the time of the accident. Accordingly, Brazil Gin was liable under the doctrine of respondeat superior for the tort committed by Hayes, and was, as a lessee of the tractor and as an employer of Hayes, an additional insured under the Federated policy.

*Id.*

The Complaint alleges that as Querry's employer, Ambyth is vicariously liable for Querry's negligence. These allegations equate to a claim that Ambyth is vicariously "legally responsible" for Querry's negligence. As alleged in the Complaint, Ambyth is therefore an "insured" as that term is defined under the omnibus clause of the National Union Policy. *See id.*

Accordingly, both Querry, the permissive actual user of the Mobil Tanker Truck, and Ambyth, allegedly "legally responsible" for the use of the Tanker Truck under a *respondeat superior* theory, are insureds under the National Union policy.

### 3. An Insurer is Barred by the "AntiSubrogation Rule" from Bringing Either Equitable or Contractual Subrogation Against Its Insured.

The law is clear that an insurer is barred by the "antisubrogation rule" from bringing a subrogation claim, whether equitable or contractual, against its insured. National Union is therefore barred from asserting its subrogation claims against its insureds Ambyth and Querry, and against Pacific Indemnity under the direct action statute for indemnification for damages sought against Ambyth and Querry under the subrogation claims.

10

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 302 (Cal. Ct. App. 1998). "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Id.*

The rule against subrogating against the insurer's insured was lucidly summarized by the New York Court of Appeal in *ELRAC, Inc. v. Ward*, 748 N.E.2d 1, 8-9 (N.Y. 2001), where the court stated:

> Subrogation is an equitable doctrine that "entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" . . . . If, for example, an insured is driving a car and is hit and injured by another driver, the insured may file a claim with her insurer. The insurer then has the right, under the common law of subrogation, to "stand in the shoes" of the insured and seek recompense from the third-party tortfeasor for the amount paid to the insured, provided that the insured has been made whole . . . . This Court has long recognized an insurer's equitable right to bring a subrogation action against a third party whose wrongdoing has caused a loss to its insured . . .
>
> There is, however, an exception to the right of subrogation, termed the antisubrogation rule. Under that rule, an "insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered * * * even where the insured has expressly agreed to indemnify the party from whom the insurer's rights are derived" . . . . In other words, an insurer may not step into the shoes of its insured to sue a third-party tortfeasor--if that third party also qualifies as an insured under the same policy--for damages arising from the same risk covered by the policy. This rule applies even if the third-party tortfeasor has expressly agreed to indemnify the insured for the loss. The purpose of this rule is to prevent an insurer from using the right of subrogation to avoid paying coverage that is due under the policy . . . . Additionally, the antisubrogation rule limits the instances in which an insurer and its insured have adverse interests, which might undercut an insurer's incentive to provide a vigorous defense to its insured . . . .

*ELRAC, Inc.*, 748 N.E.2d at 8-9.

11

California courts similarly hold that an insurer does not have a right of equitable subrogation against its own insured when the loss or liability is one for which the insured is covered under the policy. The court in *Truck Ins. Exchange v. County of Los Angeles*, 115 Cal. Rptr. 2d 179 (Ct. App. 2002), echoed this widely-accepted rule, explaining:

> An insurer has no right of equitable subrogation against its own insured with respect to a loss or liability for which the insured is covered under the policy because, as between the insurer and the insured, the insurer assumes responsibility for the loss or liability. For the insurer to recover from its insured for an insured loss or liability would undermine the insured's coverage and would be inequitable. If the policy does not cover the insured for a particular loss or liability, however, it would neither undermine the insured's coverage nor be inequitable to impose the loss or liability on the insured if the insured caused or was otherwise responsible for the loss or liability.

*Truck Ins. Exchange*, 115 Cal. Rptr. 2d at 185.

Other jurisdictions are in accord. In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 658 F. Supp. 775, 780 (N.D. Ill. 1987), the court explained that:

> [T]he Counterclaim's final death warrant is sealed by the very nature of Insurers' claim: one to sue their own insureds for indemnity. Illinois (like most if not all other jurisdictions) holds an insurer does not have a direct right to indemnity against a wrongdoer who has caused an insured's injury. Instead an insurer's only right is derivative as the subrogee of its insured. . . . In Illinois an insurer therefore cannot sue its own insured via subrogation. . . :
>
>> Subrogation cannot be obtained against another insured under the same policy, even if such protection is indirect.

*National Union*, 658 F. Supp. at 780 (citations omitted); *see also Tri–State Ins. Co. of Minnesota v. Commercial Group West, LLC*, 698 N.W.2d 483, 487 (N.D. 2005) (holding that under the "antisubrogation rule," "[a]n insurer is not entitled to subrogation from entities named as insureds in the insurance policy, or entities deemed to be additional insureds under the policy") (citation omitted).

12

Furthermore, the antisubrogation rule applies to persons who are insureds by virtue of being permissive users of the vehicles. In *Jefferson Ins. Co. of New York v. Travelers Indemnity Co.*, 703 N.E.2d 1221 (N.Y. 1998), the court explained that the antisubrogation rule "is premised, in part, on the avoidance of a conflict of interest that would undercut the insurer's incentive to provide an insured with a vigorous defense. Additionally, enforcement of the rule seeks to prohibit an insurer from passing its loss to its own insured." *Id.* at 1227. The court found no distinction where the status as insured is as a permissive user, finding that:

> For the purposes of the antisubrogation rule, there is simply no reason for treating a "permissive user" insured differently than a named insured. An insurer covering a permissive user under its policy would still be subject to the same potential conflict of interest, and an insurer in explicitly providing for such coverage should not be surprised to pay claims that it covered.

*Id.* at 1227-1228; *see also American General Fire and Cas. Co. v. Truck Ins. Exchange*, 660 F. Supp. 557, 568 (D. Kan. 1987) ("The court finds American General is not entitled to indemnification or contribution. Since C. Maxwell is insured by the American General policy as a permissive user, the insurer cannot seek indemnification from the carrier. It is generally recognized that an insurer is not entitled to be subrogated to the right of its named assured against an additional insured under the omnibus or "permissive user" clause.") (citing *Carolina Casualty Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304, 314 (5th Cir.1978)).

### 4. The Anti-Subrogation Rule Applies Even When There is a Separate Agreement to Indemnify Against the Loss.

The provisions of the TSA regarding indemnification for loss do not undermine application of the anti-subrogation rule. Couch states that:

13

The "antisubrogation rule" prohibits an insurer's subrogated action against its own insured for a claim arising from the very risk for which the insured was covered, even if the insured has expressly agreed to indemnify the party from whom the insurer's rights are derived and has separate, coexisting policies for contractual and common law indemnity liability

. . .

Accordingly, even if an insured has contractually agreed to indemnify a party whose rights have been subrogated to the insurer, the insurer has no right of subrogation against its own insured with respect to claims arising from the very risk for which the insured.

16 Lee R. Russ, *Couch on Insurance*, § 224:2 (3rd ed. 2006); *see also Pennsylvania General Ins. Co. v. Austin Powder Co.*, 502 N.E.2d 982, 983 (N.Y. 1986) ("An insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. This rule applies even where the insured has expressly agreed to indemnify the party from whom the insurer's rights are derived and has procured separate insurance covering the same risk."); *cf.* 16 Lee R. Russ, *Couch on Insurance*, § 224:4 (3rd ed. 2006) (explaining that with regard to indemnification claims "[b]arring a contractual claim but not a common-law claim would thwart the antisubrogation principle by permitting an insurer to fashion the litigation so as not to trigger coverage under its policy").

### 5. The AntiSubrogation Rule Applies to Actions Between Insurers.

National Union's claims against Pacific Indemnity are brought under Guam's direct action statute, 22 G.C.A. § 18305, which directs that:

> On any policy of liability insurance the injured person or his heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in Guam and whether or not such policy contains a provision forbidding such direct action, provided that the cause of action arose in Guam. Such action may be brought against the insurer alone, or against both the insured and insurer.

14

Under this statute, the liability of the insurer depends on the legal liability of the insured. *See Capital Insurance & Surety Co. v. Kelly*, 361 F.2d 567, 570-71 (9th Cir. 1966). Because National Union is barred by the antisubrogation rule from asserting its claims against Ambyth and Querry, it has no claim against Pacific Indemnity under the direct action statute.

The anitsubrogation rule applies not only to bar actions by an insurer against its insured, but it further extends to actions against another insurer for indemnification of the loss caused by the common insured under the other insurer's policy.

In *American General Fire and Cas. Co. v. Truck Ins. Exchange*, 660 F. Supp. 557 (D. Kan. 1987), the insurer for the lessor of a semi-truck and trailer, American General, sought indemnification from the lessee's insurer, TIE, for claims arising out of a motor vehicle accident involving the semi-truck and trailer. *American General*, 660 F. Supp. at 559-60. The policy issued by the lessor's insurance company, American General, was found to provide coverage for the lessee, C. Maxwell Trucking Company and its driver. *Id.* at 566-67. In analyzing American General's indemnification claim and its alternative claim from the lessee's insurer, TIE, for the settlement paid to the third-parties injured in the accident, the court first distinguished indemnity from contribution but found that American General was entitled to neither indemnification nor contribution, explaining:

> Plaintiff American General argues that it is entitled to indemnification or, in the alternative, contribution from TIE for the settlement paid to the Markums. The right to indemnity is related to the right of contribution, but the two are distinguishable.
>
> In the case of indemnity the defendant is liable for the whole damage ⋯ springing from contract, while in contribution the defendant is chargeable only with a ratable proportion founded not on contract but upon equitable factors measured by equality of

15

> burden···· Stated another way, while contribution distributes the loss
> equally among all tortfeasors, each bearing his pro rata share,
> indemnity seeks to transfer the entire loss imposed upon a tortfeasor
> to another who, in justice and equity, should bear it.

*Symons v. Mueller Co.,* 526 F.2d 13, 16 (10th Cir.1975).

> The court finds American General is not entitled to indemnification
> or contribution. Since C. Maxwell is insured by the American General
> policy as a permissive user, the insurer cannot seek indemnification from
> the carrier. It is generally recognized that an insurer is not entitled to be
> subrogated to the right of its named assured against an additional insured
> under the omnibus or "permissive user" clause. *Carolina Casualty Ins. Co.
> v. Underwriters Ins. Co.,* 569 F.2d 304, 314 (5th Cir.1978).

*Id.* at 567-68.

Similarly, in *Jefferson Ins. Co. of New York v. Travelers Indemnity Co.,* 703 N.E.2d 1221

(N.Y. 1998), the court held, in a case involving a leased van, that the antisubrogation rule barred

the indemnity claim by the van lessor's liability insurers (Jefferson and Reliance) against the lessee

(Continental Copy) and the lessee's insured (Travelers) since the lessee was insured as a

permissive user under Jefferson and Reliance's policy. *Jefferson Ins. Co.,* 703 N.E.2d at 1127-

1128. The court likened the case to that in which the party against whom indemnification was

sought was an additional insured, and held: "Reaching Jefferson and Reliance's alternative theory

of recovery-indemnity-we conclude that the antisubrogation rule did bar the indemnity claim

against Travelers as the insurer of Continental Copy." *Id.* In reaching this conclusion, the court

explained:

> Jefferson and Reliance, who insure A-Drive (the owner of an injury-causing
> vehicle), seek to recover as subrogees on the theory that the vehicle's lessee,
> Continental Copy, who as a permissive user is also their own additional
> insured, is required to indemnify them. . . . Jefferson and Reliance as
> subrogees should be prohibited from recovering from Travelers in its
> capacity as insurer of Continental Copy. Jefferson and Reliance insured not
> only A-Drive, but Continental Copy as well. It is clear that as a lessee
> Continental Copy was a permissive user of the van, and as such was an

16

insured by virtue of that portion of Reliance's "WHO IS INSURED" clause which stated that "[a]nyone else is an insured while using with your permission a covered auto you [A-Drive] own, hire or borrow."

. . . .

The fact that Reliance insured Continental Copy because it was a permissive user of the van instead of a named insured is immaterial for purposes of application of the antisubrogation rule, and a claim against Travelers grounded on an indemnity theory of recovery must fail.

*Id.*; *see also Travelers Indem. Co. v. LLJV Development Corp.*, 643 N.Y.S.2d 520, 526 (N.Y.A.D. 1996) ("Continental argues that the antisubrogation rule set forth in *North Star Reins. Corp. v. Continental Ins. Co., supra*, 'is inapplicable to actions between insurers.' Without belaboring the shortcomings of this argument, it is evident that the application of such a blanket exception to the circumstances of this case, which implicates the sound policy considerations prompting enunciation of the rule, would hardly advance 'the public interest in assuring integrity of insurers' relations with their insureds and in averting even the potential for conflict of interest'") (citation omitted).

In accordance with the foregoing authorities, National Union is precluded under the antisubrogation rule from seeking indemnification from Pacific Indemnity for damages and expenses paid by National Union as a result of the alleged liability for such claims on the part of Querry or Ambyth, both of whom are insureds under the National Union Policy. *Jefferson Ins. Co.*, 703 N.E. 2d at 1127-1128.

### 6. The National Union Complaint Must be Dismissed.

In accordance with the foregoing discussion, the law is clear that an insurer cannot bring a subrogation claim against its insured. Ambyth and Querry were insureds under the omnibus clause of the National Union Policy.

17

The facts as alleged in the Complaint show that National Union has paid all third-party claims, as well as expenses, incurred in connection with the Tanker Truck Accident. *See* Complaint, ¶¶ 36, 38. National Union has admitted that they will pay future claims made by or on behalf of third parties, and expenses relating to the Tanker Truck Accident. Complaint, ¶¶ 47, 51. National Union has adjusted and negotiated settlements, discharging the liability of all joint-tortfeasors, including Ambyth, Querry, and Pacific Indemnity, with respect to nearly all claims made by third parties in connection with the Tanker Truck Accident. Complaint, ¶ 33 & Exhibit 8. National Union paid all claims independently and without the assistance or input of Ambyth, Querry, or Pacific Indemnity. *See id.* National Union now seeks to step into the shoes of Mobil and sue Ambyth and Querry, insureds under the National Union Policy, for amounts paid in settlement of the very claims which were covered under the National Union Policy, and which inured to the benefit of Ambyth and Querry. Allowing National Union to proceed against its insureds, and to seek indemnification from Pacific Indemnity for damages flowing from the alleged liability of Querry and Ambyth, would not only permit National Union to avoid coverage for the risk insured under the Nation Union Policy, but would also foster an environment wherein insurers dispose of claims in any manner and amount it deems fit, and, in light of the ability to pass the losses on to the insured, without regard to what would otherwise be its own interests in minimizing the amounts paid. Such behavior, which has a distinct effect of rendering the insurer less likely to protect the interests of itself to the detriment of the insured, underscores application of the antisubrogation rule.

The claims and expenses resulting from the Tanker Truck Accident have been paid. While Mobil may have a right to file claims against Ambyth or Querry for damages caused by

18

them, National Union cannot step into Mobil's shoes and seek recovery for claims paid under the National Union Policy for the simple fact that National Union's policy also covered Ambyth and Querry.

## IV. CONCLUSION

For the reasons set forth above, Pacific Indemnity requests that this honorable Court dismiss National Union's subrogation claims as against Pacific Indemnity, as well as National Union's direct action claim, because these claims cannot be the basis for relief in this case.

Respectfully submitted, this 11th day of August, 2006.

CIVILLE & TANG, PLLC

By: _____
G. PATRICK CIVILLE
*Attorneys for Defendant*
*Pacific Indemnity Insurance Company*