RECEIVED

APR 15 2005

GUAM INSURANCE
ADJUSTERS

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**
   "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".
2. **Contractual**
   Liability assumed under any contract or agreement
   But this exclusion does not apply to liability for damages:
   a. Assumed in contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent tot he execution of the contract or agreement: or
   b. That the "insured" would have in the absence of the contract or agreement.
3. **Workers' Compensation**
   Any obligation for which the "insured" or the "insureds" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.
4. **Employee Indemnification And Employer's Liability**
   "Bodily injury" to:
   a. An "employee" of the "insured" arising out of and in the course of"
      (1) Employment by the "insured" or
      (2) Performing the duties related to the conduct of the "insured's" business; or
   b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.
   This exclusion applies:
      (1) Whether the "insured" may be liable as an employer or in any other capacity; and
      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
   But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.
5. **Fellow Employee**
   "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of you business.
6. **Care, Custody, Or Control**
   "Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insureds" care, custody or control. But this exclusion doe not apply to liability assumed under a side tract agreement.
7. **Handling Of Property**
   "Bodily injury" or "property damage" resulting from the handling of property:
   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or
   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".
8. **Movement Of Property By Mechanical Device**
   "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".
9. **Operations**
   "Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definitions of "mobile equipment".

CA 00 01 05 03 PI          Copyright, Insurance Services Office, Inc., 1996                                    Page 4 of 13

Case 1:06-cv-00017   Document 26-15   Filed 09/01/2006   Page 1 of 14

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by your or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect tot he fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release of escape of "pollutants":

a. That are, or that are contained in any property that is:
    (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";
    (2) Otherwise in the course of transit by or on behalf of the "insured"; or
    (3) Being stored, disposed of, treated or processed in or upon the covered "auto";
b. Before the "pollutants" or any property I which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or
c. After the "pollutants" or property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result form the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and
(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and
(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

RECEIVED
APR 15 2005
GUAM INSURANCE ADJUSTERS

12. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

13. **Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

C. **Limit of Insurance**

Regardless of the number of covered "autos", "insureds" premiums paid, claims made or vehicles involved in the "accident" the most we will pay for the total of all damage and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement or Uninsured Motorist Coverage Endorsement is attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

A. **Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:
   a. **Comprehensive Coverage**
      From any cause except
      (1) The covered "auto's" collision with another object; or
      (2) The covered "autos" overturn
      (3) Typhoon and/or Windstorm

   b. **Typhoon and/or Windstorm Coverage**
      Caused by:
      1. Loss or damage caused directly or indirectly, by a Typhoon or a Windstorm, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or
      2. Loss or damage caused by rain, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Typhoon or Windstorm.

      But if a Typhoon or Windstorm results in a cause of loss other than rain, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Loss. For example, if the Typhoon or Windstorm damages an automobile and fire results, the loss attributable to the fire is covered subject to any other applicable policy provisions.

   c. **Collision Coverage**
      Caused by:
      (1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. **Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting a Bird Or Animal – Falling Objects or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:
   a. Glass breakage;
   b. "Loss" caused by hitting a bird or animal; and
   c. "Loss" caused by falling objects or missiles.
However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

We will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry Comprehensive Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

B. **Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
   a. **Nuclear Hazard**
      (1) The explosion of any weapon employing atomic fission or fusion; or
      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
   b. **War Or Military Action**
      (1) War, including undeclared or civil war;
      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.
2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such contest or activity.
3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:
   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.
4. We will not pay for "loss" to any of the following:
   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.
   b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.
   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.
   d. Any accessories used with the electronic equipment described in Paragraph c. above.

   Exclusions **4.c.** and **4.d.** do not apply to:
   a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable form a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto" or

   b. Any other electronic equipment that is:
      (1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or
      (2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

C. **Limit of Insurance**

The most we will pay for "loss" in any one "accident" is the lesser of:
1. The actual cash value of the damaged or stolen property as of the time of the "loss"; or
2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

D. **Deductible.**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – COMMERCIAL BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:
A. **Loss Conditions**
   1. **Appraisal for Physical Damage Loss**
      If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of the "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
      a. Pay its chosen appraiser; and
      b. Bear the other expense of the appraisal and umpire equally.
      If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim Suit Or Loss**
   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
   a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
      (1) How, when and where the "accident" or "loss" occurred;
      (2) The "insured's" name and address; and
      (3) To the extent possible, the names and addresses of any injured persons and witnesses.
   b. Additionally, you and any other involved "insured" must:
      (1) Assume no obligation, make no payment or incur no expense without or consent, except at the "insured's" own cost.
      (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
      (4) Authorize us to obtain medical records or other pertinent information.
      (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.
   c. If there is "'loss'" to a covered "auto" or its equipment you must also do the following:
      (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.
      (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.
      (3) Permit us to inspect the covered "auto" and records proving the "'loss'" before its repair or disposition.
      (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**
   No one may bring a legal action against us under this Coverage Form until:
   a. There has been full compliance with all the terms of this Coverage Form; and
   b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of the obligation has finally been determined by judgement after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **"Loss" Payment – Physical Damage Coverages**
   At our option we may:
   a. Pay for, repair or replace damaged or stole property;
   b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or
   c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

5. **Transfer Of Rights Of Recovery Against Others To Us**
   If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "'loss'" to impair them.

B. **General Conditions**

   1. **Bankruptcy**

RECEIVED
APR 15 2005
GUAM INSURANCE ADJUSTERS

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

   This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:
   a. This Coverage Form;
   b. The covered "auto";
   c. Your interest in the covered "auto"; or
   d. A claim under this Coverage Form.

3. **Liberalization**

   If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day of the revision is effective in your state.

4. **No Benefit To Bailee -- Physical Damage Coverages**

   We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**
   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:
      (1) Excess while it is connected to a motor vehicle you do not own.
      (2) Primary while it is connected to a covered "auto" you own.
   b. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".
   c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".
   d. When this Coverage form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**
   a. The estimate premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine you actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.
   b. If this policy is issued for more than one year, the premium for this Coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**
   Under this Coverage Form, we cover "accidents" and "losses" occurring:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory
   The coverage territory is:
   a. The United States of America;
   b. The territories and possessions of the Unites States of America;
   c. Puerto Rico; and
   d. Canada.
   We also cover "loss" to, or "accidents" involving a covered "auto" while being transported between any of these places.

   RECEIVED
   APR 15 2005
   GUAM INSURANCE ADJUSTERS

8. **Two Or More coverage forms Or Policies Issued By Us**

   If this coverage form and any other coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage forms or polices shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V. – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".
B. "Auto" means a land motor vehicle, "trailer" or semi-trailer designed for travel on public roads but does not include "mobile equipment".
C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
D. "Covered pollution cost or expense" means any cost or expense arising out of"
   1. Any request, demand or order; or
   2. Any claim "suit" by or on behalf of a governmental authority demanding
   that the "insured" or others test for, monitor, clean up, remove, contain treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".
   "covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
      a. That are, or that are contained in any property that is:
         (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";
         (2) Otherwise in the course of transit by or on behalf of the "insured";
         (3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or
      b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or
      c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".
   Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacture to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. or 6.c. of the definitions of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal., seepage, migrations, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

F. "insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

G. "Insured contract" means:
1. A lease or premises;
2. A sidetrack agreement;
3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or property damage" to the third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contact" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that pare of any contract or agreement:
a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or
b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employee", if the "auto" is loaned, leased or rented with a driver; or
c. That holds a person or organization engaged in the business of transportation property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

I. ""Loss"" means direct and accidental "loss" or damage.

J. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;
4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
   a. Power cranes, shovels, loaders, diggers or drills; or
   b. Road construction or resurfacing equipment such as graders, scrapers or rollers.
5. Vehicles not described in Paragraphs 1., 2., 3., 4., above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
   b. Cherry pickers and similar devices used to raise or lower workers.
6. Vehicles not described in Paragraphs 1., 2., 3., or 4. Above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
   a. Equipment designed primarily for:
      (1) Snow removal;
      (2) Road maintenance, but not construction or resurfacing; or
      (3) Street cleaning;
   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

K. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
L. "Property damage" means damage to or "loss" of use of tangible property.
M. "Suit" means a civil proceeding in which:
   1. Damages because of "bodily injury" or "property damage" or
   2. A "covered pollution cost or expense", to which this insurance applies, are alleged.
   "Suit" includes:
   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or
   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consents.
N. "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.
O. "Trailer" includes semitrailer.

**RECEIVED**

APR 15 2005

**GUAM INSURANCE ADJUSTERS**

POLICY NUMBER: LBA1110064

COMMERCIAL AUTO LIABILITY
CA PI 01 04 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIMITS OF INSURANCE COMMERCIAL AUTOMOBILE LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE LIABILITY POLICY
COMMERCIAL AUTOMOBILE LIABILITY COVERAGE PART

**RECEIVED**
APR 15 2005
GUAM INSURANCE ADJUSTERS

### SCHEDULE

| | Limits of Insurance |
|---|---|
| The most we will pay for any one accident or loss | $100,000 |

**Designated Location: Commonwealth of the Northern Mariana Islands**

(If no entry appears above, information required to complete this endorsement will be shown in the declarations as applicable to this endorsement.)

The limits of insurance shown in the Declarations are replaced by the limits designated in the Schedule with respect to the Designated Location entered above. These limits are inclusive of and are not in addition to the limits being replaced.

CA PI 01 04 04

# POLICY CHANGE
## COMMERCIAL LINES

1                                                               April 4, 2004

| NAME AND ADDRESS OF AGENCY | 472-8834 | INSURANCE COMPANY |
|---|---|---|
| CASSIDY'S ASSOC. INSURERS, INC<br>376 W. O'BRIEN DRIVE<br>AGANA, GU 96910<br>AGENCY CODE    COMPANY | | PACIFIC INDEMNITY INSURANCE CO<br>348 W. O'BRIEN DR.<br>AGANA           GU 96910 |

| NAME AND MAILING ADDRESS OF INSURED | POLICY NUMBER | POLICY TYPE |
|---|---|---|
| AMBYTH SHIPPING & TRADING, INC<br>(SEE NAMED INSURED ENDST.)<br>1026 CABRAS HWY SUITE 205<br>PITI, GU              96926 | LBA11100644 | C/AU |

POLICY PERIOD (INCEPTION) April 1, 2004 TO April 1, 2005 (EXPIRATION)

Change effective May 17, 2004

1. C/AU COMM.AUTO MASTER-94

----------------------------------------------------------------

IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM TRIA 00A1 GU IS ATTACHED TO AND FORMS A PART OF THE ABOVE SUBJECT POLICY.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**RECEIVED**

APR 1 5 2005

GUAM INSURANCE ADJUSTERS

(Authorized Signature)
Michael Cassidy                                    00(A)

POLICY NUMBER: LBA11100644                                     COMMERCIAL AUTO INSURANCE
                                                                              CA 100 05 03 PI

Cancellation and non-renewal provisions, if any, in the Commercial Auto Coverage Form are amended to read fifteen days for non-payment of premium. If we cancel or non-renew automobile coverage we will give you thirty days notice of same.

X.  **LEGAL ACTION AGAINST US ENDORSEMENT**
    A.  SECTION IV – BUSINESS AUTO CONDITIONS; A. Loss Conditions; 3. Legal Action Against Us is revised to read:
        1.  No one may bring a legal action against us under this Coverage Form until:
            a.  There has been full compliance with all the terms of this Coverage Form; and
            b.  Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of the obligation has finally been determined by judgement after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability; and
            c.  Must conform with legal statutes on Guam at the time of issuance of the policy.

This entire CONSOLIDATED MANDATORY EXCLUSIONS ENDORSEMENT applies to the current and all future renewals of the policy to which it was attached.

I, the undersigned, having the authority to sign on behalf of the named insured, acknowledge and accept the above changes effective as of _____ **APRIL 1, 2004** _____ and forming a part of policy number ____ **LBA11100644** ____ of the Pacific Indemnity Insurance Company issued to **AMBYTH SHIPPING & TRADING, INC. ITS WHOLLY OWNED SUBSIDIARIES AND OPERATING ENTITIES.**

MD,
Pls. replace
your copy
w/ this pg. 6

**RECEIVED**

APR 15 2005

**GUAM INSURANCE ADJUSTERS**

# PACIFIC INDEMNITY INSURANCE COMPANY
# NOTIFICATION OF
# TERRORISM INSURANCE

RECEIVED
APR 15 2005
GUAM INSURANCE ADJUSTERS

The purpose of this notice is to inform you of your rights regarding the Terrorism Risk Insurance Act, under H.R. 3210, which was signed into law by President George W. Bush.

As you know, loss due to Terrorism was originally excluded from your policy number LBA11100644. However, under provisions of the Terrorism Risk Insurance Act, you are immediately entitled to be insured for the peril of Terrorism, as defined by the Act, making the current Terrorism Exclusion on your policy null and void, provided you pay the applicable premium within 30 days.

The premium of Terrorism coverage under your policy number LBA11100644 is $5,151.00. However, under the provisions of the Terrorism Risk Insurance Act, you are immediately entitled to be insured for the peril of Terrorism, as defined by the Act, making the current Terrorism Exclusion on your policy null and void, provided you pay the applicable premium within 30 days.

In the event of a loss arising from Terrorism, Pacific Indemnity is responsible for paying 100% of the loss, up to an amount equal to 7% to 15% of the total of all of the Company's direct earned premiums on all of our commercial insurance policies in force. Above this amount, the Federal Government will pay 90% of the loss and Pacific Indemnity will pay 10% of the loss.

If you wish to be insured for Terrorism under policy number LBA11100644, please pay 100% of the premium amount indicated above within the next 30 days, we will automatically issue a new Terrorism exclusion, effective from MAY 17, 2004, in keeping with the provisions of the Terrorism Risk Insurance Act.

If you have no desire to purchase this Terrorism coverage, please sign and return this notice as your acknowledgement and we will immediately issue a new Terrorism exclusion.

Please call us if you have any questions. Thank you for your understanding and cooperation.

I understand this notice and choose not to purchase Terrorism insurance coverage under policy number LBA11100644.

_____
Authorized Representative of the Insured

Notification issuing date: April 12, 2004