1

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
2   HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
3   FACSIMILE: (671) 472-2601

4   *Attorneys for Third-Party Defendant,*
     *Cassidy's Associated Insurers, Inc.*
5

6

7

8                    IN THE DISTRICT COURT OF GUAM

9                              ----------

10   NATIONAL UNION FIRE INSURANCE          )    CIVIL CASE NO. 06-00017
                                            )
11              Plaintiff,                   )
                                            )
12        vs.                                )
                                            )
13   PACIFIC INDEMNITY INSURANCE            )
     COMPANY and AMBYTH SHIPPING &          )
14   TRADING, INC., dba AMBYTH TRUCKING, )
                                            )    **THIRD-PARTY DEFENDANT**
15              Defendants,                  )    **CASSIDY'S ASSOCIATED INSURERS,**
                                            )    **INC.'S THIRD PARTY COMPLAINT**
16   _____        )    **FOR INDEMNIFICATION AND**
     AMBYTH SHIPPING & TRADING, INC.,       )    **DECLARATORY RELIEF**
17   dba AMBYTH TRUCKING,                   )    **AGAINST AMERICAN HOME**
                                            )    **ASSURANCE COMPANY**
18              Third-Party Plaintiff,       )
                                            )
19        vs.                                )
                                            )
20   CASSIDY'S ASSOCIATED INSURERS,         )
     INC.,                                   )
21                                          )
                Third-Party Defendant.       )
22                             ----------

23   ///

ORIGINAL

1    COMES NOW Third-Party Defendant Cassidy's Associated Insurers, Inc. ("Cassidy's"),

2    through counsel, Teker, Torres & Teker, P.C., by Joseph Razzano, Esq., pursuant to FRCP Rule 14

3    (a), upon leave of the court, files it's Third-Party Complaint for Declaratory Relief and for

4    Indemnification against American Home Assurance, and alleges as follows:

5        1.      Cassidy's is a corporation domiciled and having its principal place of business in the

6    Territory of Guam, and is duly licensed therein to transact business as an insurance agency and

7    broker.

8        2.      Third-Party Defendant American Home Assurance, ("American Home") is a foreign

9    insurance company duly licensed to transact insurance within the Territory of Guam.   On

10   information and belief, Cassidy's alleges that American Home is domiciled and has its principal

11   place of business in the State of New York.

12       3.      Plaintiff National Union Fire Insurance Company of Pittsburgh, PA., ("National

13   Union"), is a foreign insurance company duly licensed to transact insurance within the Territory of

14   Guam.  National Union is domiciled in the State of Pennsylvania and has its principal place of

15   business in the State of New York.

16       4.      On information and belief, Cassidy's alleges that both American Home and Plaintiff

17   National Union Fire Insurance Company of Pittsburgh, PA., are member companies of American

18   International Group, Inc., ("AIG").

19       5.      Defendant and Third-Party Plaintiff Ambyth Shipping and Trading, Inc., dba Ambyth

20   Trucking, ("Ambyth") is domiciled and has its principal place of business within the Territory of

21   Guam.

22                              **JURISDICTION**

23       6.      This Court has jurisdiction over Third-Party Plaintiff Cassidy's.

1    7.    This Court has jurisdiction over Third-Party Defendant American Home.

2    8.    This Court has jurisdiction over Plaintiff National Union.

3    9.    This Court has jurisdiction over Defendant Ambyth

4    10.    This Court has subject matter jurisdiction of Third-Party Plaintiff Cassidy's claims

5    on the basis of diversity, pursuant to 28 U.S.C. §1332, saving to Cassidy's all other remedies to

6    which it may be entitled.

7    11.    The amount in controversy exceeds the sum of $75,000.00.

8                                    **COUNT I.**

9                              **DECLARATORY RELIEF**

10    12.    At all relevant times alleged in the pleadings filed in the above-entitled action,

11    American Home had issued to Cassidy's a Professional Indemnity Insurance Policy under the terms

12    of which American Home agreed to pay on behalf of Cassidy's any loss which Cassidy's became

13    legally liable to pay for a negligent breach of duty by reason of any wrongful professional act

14    committed or allegedly committed by Cassidy's in providing professional services as an insurance

15    agency and broker. A copy of the Professional Indemnity Insurance Policy is attached hereto,

16    marked exhibit "A" and incorporated as part of this Third-Party Complaint as if fully set forth herein.

17    13.    On January 30, 2007, Defendant and Third-Party Plaintiff Ambyth, filed its' Third-

18    Party Complaint against Cassidy's, alleging in Count I that Cassidy's had negligently breached its

19    duty to Ambyth by failing to place the insurance coverage that Ambyth had requested and relied

20    upon Cassidy's to obtain, and further alleging in Count II that Cassidy's had breached its contract

21    with Ambyth by failing to obtain the insurance   which Ambyth had requested and contracted for.

22    14.    In its' Third-Party Complaint, Ambyth seeks an order of the court requiring Cassidy's

23    to indemnify Ambyth for any liability or defense costs awarded against Ambyth in the above-entitled

1  action, an award of compensatory, actual, and consequential damages against Cassidy's, pro-rated
2  return of premium and the recovery of attorneys fees and costs.

3  15.  On February 2, 2007, Cassidy's sent its notice of claim to American Home as
4  required by the policy of insurance issued by American Home.

5  16.  On March 8, 2007, American Home, through American International Underwriters
6  Claims Management, responded by letter acknowledging Cassidy's notice of claim and agreeing to
7  undertake the defense of Ambyth's Third-Party Complaint, subject to a lengthy and detailed
8  reservation of rights. A copy of American Home's March 8, 2007, reservation or rights letter is
9  attached hereto, marked exhibit "B" and made part of this Third-Party Complaint as if fully set forth
10  herein.

11  17.  In its March 8, 2007, reservation of rights letter, American Home states, inter alia,
12  that the cause of action for breach of contract contained in Ambyth's Third-Party Complaint is not
13  covered and reserves its right to deny coverage for any damages arising out of breach of contract.

14  18.  American Homes' reservation of rights as to any claim arising out of breach of
15  contract goes to the fundamental issue of coverage provided under the Professional Indemnity
16  Insurance Policy and is directly related to the claim for Breach of Contract alleged in Ambyth's
17  Third-Party Complaint.

18  19.  By asserting its reservation of rights as to any claim arising out of breach of contract,
19  American Home has created a conflict of interest on the part of counsel appointed by it to defend
20  Cassidy's in this action by placing said counsel in the position of being able to control the outcome
21  of the coverage issue relating to the Breach of Contract claim alleged in Count II of Ambyth's Third-
22  Party Complaint.

23  20.  Cassidy's further alleges on information and belief that American Home and National

1    Union are member companies of AIG, and as such, insure and represent the interests of both the

2    Plaintiff and Cassidy's in this action. Because National Union and American Home as member

3    companies of AIG insure opposing interests in this litigation, a conflict of interest has resulted and

4    now exists as to any counsel appointed by American Home to defend Cassidy's in this action.

5        21.     The conflicts of interest on the part of counsel appointed by American Home as

6    alleged herein mandate the appointment of independent counsel at the expense of American Home

7    pursuant to the provisions of 22 GCA §12111.

8        22.     American Home has, as of the date of filing this third-party complaint, failed to

9    respond to Cassidy's demand that independent counsel be appointed in accordance with the

10    requirements of 22 GCA §12111.

11 **COUNT II.**

12 **INDEMNIFICATION**

13        23.     Cassidy's realleges paragraphs 1 through 22 of this Third-Party Complaint. American

14    Home's reservation of rights letter includes a reservation of rights as to claims for property damage,

15    asserting that coverage may not be available for any damage to or the loss of use of any property,

16    including but not limited to, the motor vehicles involved in the accident described in the complaint

17    filed in this action.

18        24.     The reservation of rights letter issued by American Home has left Cassidy's uncertain

19    as to the coverage available under the Professional Liability Insurance Policy issued by American

20    Home. In particular, Cassidy's is uncertain as to the availability of coverage for the negligence and

21    breach of contract claims alleged in Ambyth's Third-Party Complaint, due to the fact that American

22    Home has taken the position that any loss resulting from a negligent failure to place insurance

23    coverage or breach of contract on the part of Cassidy's would not be covered if any part of that loss

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

was represented by damage to property. Further, American Home's position that the Professional Liability Policy does not cover any loss arising out of breach of contract has created further uncertainty because of the fact that any loss sustained by Ambyth would, if proven at trial, arise out of the single cause of failing to place insurance coverage.

25. American Home's reservation of rights letter contains many other reservations of rights as to coverage which renders Cassidy's uncertain as to whether or not it has professional liability coverage under the policy of insurance issued by American Home.

26. In issuing the Professional Liability Insurance Policy to Cassidy's, American Home agreed to pay on behalf of Cassidy's any loss which Cassidy's became legally liable to pay for a negligent breach of duty by reason of any wrongful professional act committed or allegedly committed by Cassidy's in providing professional services as an insurance agency and broker as provided under that policy. American Home is therefore obligated to pay any such loss for which Cassidy's may be found liable in this action.

27. An actual controversy has therefore arisen and now exists between the parties with regards to whether American Home has the obligation to pay on behalf of Cassidy's any and all sums which Cassidy's may become legally liable to pay as damages based on the claims alleged in Ambyth's Third-Party Complaint.

28. Because of the refusal of American Home to provide independent counsel as demanded by Cassidy's, and because of the reservation of rights issued by American Home, Cassidy's has been required to retain counsel and pursue its remedies herein.

**PRAYER FOR RELIEF**

1. That American Home be ordered to permit Cassidy's to hire independent counsel of its choosing at American Home's expense as required by 22 GCA §12111.

1    2.    That American Home be ordered to indemnify Cassidy's for any and all loss sustained

2    by Ambyth, for which Cassidy's is adjudged to be legally liable to pay because of a negligent breach

3    of duty by reason of any wrongful professional act committed or allegedly committed by Cassidy's

4    in providing professional services as an insurance agency and broker, whether plead as breach of

5    contract or otherwise, to include economic loss or damage sustained by Ambyth, measured in terms

6    of the property damage sustained by the Plaintiff in this action.

7        3.    For attorney fees and costs of suit.

8        4.    For such further relief as may be just in the premises.

9        DATED at Hagåtña, Guam, on June 7, 2007.

10                           **TEKER TORRES & TEKER, P.C.**

11

12                    By _____
                         JOSEPH C. RAZZANO, ESQ.

13                       Attorneys for Third-Party Defendant,
                         *Cassidy's Associated Insurers, Inc.*

14

15

16

17

18

19

20

21

22
     JCR:cs
23   PLDGS:CASSIDY'S INSURANCE:AMBYTH:014

# EXHIBIT A

**Renewal Endorsement**

| Policy Number | Gross Premium | Endt. No. |
|---|---|---|
| E&O-04109 | $38,500.00 | FL06-11 |
| **Item 1. Named Insured and Address** | | |

Cassidy's Associated Insurers Inc.
376 W. O'Brien Drive
Hagatna, GU 96910

| **Renewal Policy Period** | **Insuring Company** |
|---|---|
| **From** 3/22/2006 **To** 3/22/2007 | American Home Assurance Company |
| **Countersigned** | **Agent** |
| Hagatna, Guam | Calvo's Insurance Underwriters, Inc. |

In consideration of the payment of the Total Premium shown above, it is agreed that the designated Policy is renewed for the Policy Period shown above.

Nothing herein contained shall be held to vary, alter, waive or extend any of the Agreements, Conditions, Declarations, Exclusions, Limitations or Terms of the policy, or endorsement attached thereto, other than as above stated. This Endorsement shall not be binding upon the Company(ies) until it has been signed by a duly authorized representative of the Company(ies).

By: _____

Calvo's Insurance Underwriters, Inc.
General Agents

Countersigned at: Hagatna, Guam
Date Issued:03.04.06

## Renewal Endorsement

| Policy Number | Gross Premium | Endt. No. |
|---|---|---|
| E&O-04109 | $38,500.00 | FL05-08 |

**Item 1. Named Insured and Address**

Cassidy's Associated Insurers Inc.
376 W. O'Brien Drive
Hagatna, GU 96910

| Renewal Policy Period | Insuring Company |
|---|---|
| From 22-Mar-05   To   22-Mar-06 | American Home Assurance Company |

| Countersigned | Agent |
|---|---|
| Hagatna, Guam | Calvo's Insurance Underwriters, Inc. |

In consideration of the payment of the Total Premium shown above, it is agreed that the designated Policy is renewed for the Policy Period shown above.

It is hereby understood and agreed that the binding authorities listed on "Endorsement No. 3 - Binding Authorities Endorsement" of the policy are amended to the following:

Delete:     Pacific Indemnity Insurance Company, American Contractors Indemnity Co. Gulf Insurance Company Associated Marine Insurers.

Amended to:     **Pacific Indemnity Insurance Company and Associated Marine Insurers**

Nothing herein contained shall be held to vary, alter, waive or extend any of the Agreements, Conditions, Declarations, Exclusions, Limitations or Terms of the policy, or endorsement attached thereto, other than as above stated. This Endorsement shall not be binding upon the Company(ies) until it has been signed by a duly authorized representative of the Company(ies).

By: _____

Calvo's Insurance Underwriters, Inc.
General Agents

Countersigned at: Hagatna, Guam

Profession

# Specified Professions Professional Indemnity Insurance Policy

# Schedule

| | |
|---|---|
| Item 1. Policy Number: | **E&O-04109** |
| Item 2. Named Insured: | **CASSIDY'S ASSOCIATED INSURERS INC.** |
| Insurer    : | **American Home Assurance Company** |
| Item 3. Address of Insured: | 376 W. O'Brien Drive<br>Hagatna, GU, 96910 |
| Item 4. Business Activities: | Insurance Broker |

Item 5. Policy Period:

| | | |
|---|---|---|
| From: | **March 22, 2004** | at 12.00am Guam time |
| To: | **March 22, 2005** | at 12.00am Guam time |

| | |
|---|---|
| Item 6. Limit of Liability: | **$1,000,000** any one **Claim** and in the aggregate for all **Claims** during the **Policy Period** including **Defence Costs**. |
| Item 7. Retention: | **$50,000** each and every **Claim** including **Defence Costs**. |
| Item 8. Policy Wording: | ProfessionGuard Specified Professions Professional Indemnity Insurance policy wording |
| Item 9. Endorsements: | **1. Financial Transaction Exclusion**<br>**2. Excluding Additional Benefits and Definitions**<br>**3. Binding Authorities Endorsement**<br>**4. War/Act of War Exclusion** |
| Item 10. Retroactive Date: | Expiry |
| Item 11. Premium: | **$35,000** |

Issued at Hagatna, Guam this 7th day of May 2004

Signed by Calvo's Insurance Underwriters, Inc.
General Agent for and on behalf of the **Insurer**.

..................................................................Authorised signatory

# ProfessionGuard

# Specified Professions Professional Indemnity Insurance Policy

American Home Assurance Company (referred to as the **Insurer**) – through its general Agent, Calvo's Insurance Underwriters, Inc., has received a written proposal form which, together with its attachments and all underwriting information submitted, is incorporated in and forms part of this contract.

In consideration of the payment of the Premium specified in the Schedule and subject to all of the provisions of this policy, the **Insurer** agrees as follows.

## 1. Insuring Clause

### 1.1 Professional Liability

The **Insurer** will pay on behalf of the **Insured** the **Loss** which the **Insured** is legally liable to pay by reason of any **Claim** first made against the **Insured** and notified in writing to the **Insurer** during the **Policy Period** for a **Breach of Duty by reason of any Wrongful Professional Act** committed or allegedly committed by the **Insured** on or after the **Retroactive Date** and solely in providing **Professional Services** arising out of the **Insured's** business activities as shown in the Schedule.

## 2. Additional Benefits

### 2.1 Libel and Slander

**Insurer** agrees to pay on behalf of the **Insured** all sums which the **Insured** shall become legally liable to pay as damages, and expenses as a result of any *claim* or *claims* first made against the **Insured** and reported to the **Insurer** during the **Policy Period** for libel and/or slander committed unintentionally by reason of words written spoken or broadcast by electronic data processing device by the **Insured**, in the conduct of the **Insured's** business activities as shown in the Schedule

### 2.2 Intellectual Property Rights

The **Insurer** agrees to pay on behalf of the **Insured** all sums which the **Insured** shall become legally liable to pay as a result of any **claim** first made against the Insured and reported to Insurer during the **Policy Period** arising out of an unintentional breach or infringement of or unauthorised use of confidential information (excluding Trade Secret), trade marks, copyrights, or the systems or programs of others provided that the breach, infringement or unauthorised use was unintentional.

# 3 Definitions

**3.1** **Breach of Duty by reason of any Wrongful Professional Act** means any actual or alleged:

(a) breach of professional duty.

(b) fraudulent or dishonest conduct of any **Employee** for which the **Named Insured** is legally liable, provided such conduct, or conduct of a similar type, has not been condoned by the **Named Insured**. No cover is provided to the person committing the fraudulent or dishonest conduct.

(c) loss, destruction, damage or misplacement of any **Documents** for which the **Named Insured** is legally responsible and which after diligent search cannot be found. No cover is provided for the loss, damage, destruction or deterioration of any **Documents** arising out of or attributable to wear, tear or any other gradual environmental cause. The cover provided under this clause is sub-limited to $1,000,000 in the aggregate. This sub-limit forms part of and is not payable in addition to the **Limit of Liability**.

**3.2** **Claim** means:

(a) any written demand;

(b) any civil proceeding;

for compensation made against the **Insured** alleging a **Breach of Duty** but only in respect of **Professional Services**.

Any **Claim** or **Claims** arising out of, based upon or attributable to a **Single Breach of Duty** constitutes a single **Claim**.

**3.3** **Defence Costs** means any reasonable fees, costs and expenses incurred by or on behalf of the **Insured** with the prior written consent of the **Insurer** in the investigation, defence, settlement or appeal of any **Claim**.

**Defence Costs** does not include lost earnings, wages, salaries or other remuneration or benefits paid by the **Named Insured** to its principals, partners, directors, officers or **Employees**.

**3.4** **Documents** means all documents of any nature whatsoever including computer records and electronic data material but does not include bearer bonds, cheques, bills of exchange, coupons, stamps, bank or currency notes or any other form of negotiable instrument.

**3.5** **Employee** means any natural person who is a past, present or future employee expressly engaged as an employee under a contract of employment with the **Named Insured** (whether employed on a full-time, part-time or casual basis), who is employed solely to provide **Professional Services**.

**Employee** does not include consultants, independent contractors, secondees or agents of the **Named Insured** and their respective employees (including the employees of labour-hire agencies) unless under the direction and direct supervision of the **Named Insured**, or whilst working under a contract of services on behalf of the **Named Insured**.

**3.6** **Insured** means the **Named Insured** any past, present or future principal, partner, director, officer or **Employee** of the **Named Insured** but only when providing **Professional Services**.

Insured includes the estates, heirs, legal representatives or assigns of any Insured in the event of their death, bankruptcy, insolvency or incapacity.

**3.7    Limit of Liability** means the amount specified in the Schedule.

**3.8    Loss** means:

(a)    damages or compensation payable by the **Insured** pursuant to an award or judgment entered against the **Insured**;

(b)    settlements negotiated by the **Insurer** and consented to by the **Insured**;

(c)    legal costs and expenses awarded against the **Insured** but only in connection with a covered award, judgment or settlement;

(d)    **Defence Costs**;

in respect of a **Claim** which is covered under this policy.

**Loss** does not include:

(i)    fines or penalties (whether civil or criminal);

(ii)    non-compensatory damages including punitive, aggravated or exemplary damages;

(iii)    costs incurred by the **Insured** in complying with any order for, grant of or agreement to provide injunctive or other non-monetary relief;

(iv)    costs incurred by the **Insured** in correcting or re-performing any **Professional Services**;

(v)    any amount which is uninsurable pursuant to the laws of Guam in which this policy is issued.

**Loss** incurred in respect of more than one **Claim** but resulting from a **Single Breach of Duty** shall constitute a single **Loss**.

**3.9    Named Insured** means the natural person, partnership, corporation (including **Subsidiaries**) or other entity specified in the Schedule.

**3.10    Policy Period** means the period of time specified in the Schedule unless the policy is cancelled in which event the **Policy Period** will end on the effective date of the cancellation.

**3.11    Pollutants** means, but is not limited to, any solid, liquid, biological, radiological, gaseous or thermal irritant or contaminant whether occurring naturally or otherwise, including asbestos, smoke, vapour, soot, fibres, mold, spores, fungus, germs, fumes, acids, alkalis, nuclear or radioactive material of any sort, chemicals or waste. Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

**3.12    Professional Services** means the professional services specified in Business Activities in the Schedule

**3.13** **3.13** **Retention** means the amount specified in the Schedule.

**3.14** **Retroactive Date** means the date specified in the Schedule.

**3.15** **Single Breach of Duty** means a **Breach of Duty** or any causally connected **Breaches of Duty** affecting one or more than one person or entity.

**3.16** **A Subsidiary of a company or entity** means a company in which the latter, either directly or indirectly through one or more of its *Subsidiaries*:

    (i)    controls the composition of the board of directors; or
    (ii)   controls more than half of the voting power; or
    (iii)  holds more than half of the issued share capital

For the purpose of coverage under this Policy, a Subsidiary has to be declared at inception of this Policy.

**Coverage may also be extended to an entity which becomes a Subsidiary of the Named Insured** during the **Policy Period** provided that within 60 days of the entity becoming a **Subsidiary the Named Insured** has:

    (a)    notified the **Insurer** of the new **Subsidiary**; and

    (b)    provided the **Insurer** with all the information it has requested regarding the new **Subsidiary**; and

    (c)    agreed to any amendments to the provisions of this policy as required by the **Insurer**; and

    (d)    paid any additional premium required by the **Insurer**.

Cover under this policy for any **Subsidiary** applies only to **Breaches of Duty** committed or allegedly committed:

    (a)    in providing **Professional Services**; and

    (b)    whilst such entity is or was a **Subsidiary** of the **Named Insured**; *and*

otherwise on the same terms as applicable to a Named Insured.

If a company ceases to be a **Subsidiary** during the **Policy Period** this policy will continue to provide cover in respect of that **Subsidiary** until the end of the **Policy Period**, but only for **Breaches of Duty** committed or allegedly committed whilst the company was a **Subsidiary**.

**3.17** **Trade Secret** means information that has been reduced to an electronic form, including a formula, compilation, pattern, program, device, method, process, or technique which:

    (i)    derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable through proper means by other persons who can obtain economic advantage from its disclosure or use;
    (ii)   is the subject of the **Insured's** reasonable efforts to maintain its secrecy; and
    (iii)  is used, capable of being used, or intended to be used in commerce.

A **Trade Secret** does not include information that is the subject of a copyright, patent, trademark (including trademarks protected by common law rights of passing off), or service mark, or an application thereof.

# 4.  Exclusions

The **Insurer** is not liable to make any payment for **Loss** in connection with any **Claim or under Clause 2 ("Additional Benefits") of this Policy;**

## 4.1  Pollution

arising out of, based upon, attributable to or in any way connected with:

(a)  the actual or alleged, presence, imminent or threatened discharge, dispersal, seepage, release, migration or escape of **Pollutants** at any time;

(b)  any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise **Pollutants**, or in any way respond to or assess the effects of **Pollutants**.

## 4.2  Bodily Injury

arising out of, based upon, attributable to or in any way connected with; bodily injury or nervous shock, sickness, disease, death or mental anguish of any person. This Exclusion does not apply to damages for mental anguish in respect of a **Claim** for Libel and Slander which is covered under this policy.

## 4.3  Property Damage

arising out of, based upon, attributable to or in any way connected with:

(a)  damage to or destruction of any tangible property including the loss of use thereof;

(b)  the loss of use of tangible property which has not been damaged or destroyed.

## 4.4  Illegal Profits

arising out of, based upon, attributable to or in any way connected with the gaining of any profit or advantage to which an **Insured** is not legally entitled where it is established by an express or implied admission, court judgment or other adjudication that the subject conduct did in fact occur. No state of mind or knowledge possessed by any **Insured** will be imputed to any other **Insured** for the purpose of determining whether this Exclusion applies.

## 4.5  Intentional Acts

arising out of, based upon, attributable to or in any way connected with:

(a)  the committing of any criminal, dishonest, fraudulent or malicious act by an **Insured;**

(b)  the committing of any intentional **Breach of Duty** by an **Insured;**

where it is established by an express or implied admission, court judgment or other adjudication that the subject conduct did in fact occur. No state of mind or knowledge possessed by any **Insured** will be imputed to any other **Insured** for the purpose of determining whether this Exclusion applies.

## 4.6 Prior Known Facts

arising out of, based upon, attributable to or in any way connected with any:

(a) actual or alleged facts that might give rise to a **Claim** which were known to the **Insured** prior to the commencement of the **Policy Period**;

(b) actual or alleged facts which were notified or which can be notified under any policy in force prior to the commencement of the **Policy Period**;

(c) pending or prior litigation, or litigation derived from the same or essentially the same facts as might be alleged in such pending or prior litigation, as at the commencement of the **Policy Period**.

For the purposes of this Exclusion, the term litigation includes but is not limited to any civil, criminal, administrative or regulatory proceeding as well as any official investigation, examination, inquiry, arbitration or adjudication.

## 4.7 Insured versus Insured

arising out of, based upon, attributable to or in any way connected with a **Claim** brought by or on behalf of:

(a) any **Insured** or any business enterprise which is/was owned, managed or operated, directly or indirectly, in whole or part, by any **Insured**; or

(b) any entity which is/was a parent, **Subsidiary**, successor or assign of any **Insured**; or

(c) any entity which is/was affiliated with an **Insured** through common ownership or control, which includes any entity which is/was a Subsidiary of a parent of a Named Insured;or

(d) any entity which is/was an associated company of any Insured.

For the purposes of the above, a parent of an Insured shall refer to any entity of which the Insured is/was its Subsidiary; and an associated company of an Insured refers to any entity in which the **Insured** owns or owned more than 20% but less than or equal to 50% of the issued and outstanding voting shares either directly or indirectly through one or more of its *Subsidiaries*.

## 4.8 Professional Fees

arising out of, based upon, attributable to or in any way connected with disputes involving fees, charges, commissions or any other form of remuneration or consideration for **Professional Services** including but not limited to collecting the **Named Insured's** fees or commissions from persons or entities other than the **Named Insured** or the return of fees or other compensation paid to the **Named Insured**.

## 4.9 Trade Debts

arising out of, based upon, attributable to or in any way connected with any trading debt incurred by the **Insured** or any guarantee given by the **Insured** for a debt.

## 4.10 Commingling of Funds

arising out of, based upon, attributable to or in any way connected with any actual or alleged commingling of funds by the **Insured** or any inability or failure of the **Insured** to pay, collect, safeguard or account for client funds.

### 4.11 Assumed Liability

any liability assumed by an **Insured** under any contract, arrangement or understanding except to the extent that the **Insured** would have been legally liable in the absence of such contract, arrangement or understanding.

### 4.12 Insolvency

arising out of, based upon, attributable to or in any way connected with an **Insured's** actual or alleged insolvency or bankruptcy, or their actual or alleged inability to meet any or all of their debts as and when they fall due.

### 4.13 Patent/Trade Secret Exclusion

**Insurers** shall not be liable for any **Loss** arising out of breach or infringement of patents or the misappropriation of **Trade Secrets**.

### 4.14 Discrimination

arising out of, based upon, attributable to or in any way connected with any unlawful discrimination on any basis including but not limited to race, religion, ethnic background, national origin, gender, sexual preference, age, handicap, disability, marital status or pregnancy.

### 4.15 Restrictive Trade Practices

arising out of, based upon, attributable to or in any way connected with any act, error or omission which a court or tribunal finds, or which the **Insured** expressly or impliedly admits, constitutes unfair competition, restraint of trade or any other restrictive trade practice or an incitement to same.

### 4.16 Superannuation Liability

arising out of, based upon, attributable to or in any way connected with any **Employee** benefit plan or superannuation fund.

### 4.17 Managerial Liability

arising out of, based upon, attributable to or in any way connected with an **Insured** acting in the capacity of a director or officer of a company or other type of organisation.

### 4.18 USA / Canada Limitation

any *claims* made or actions instituted;-

a)   within the United States of America or Canada and any territories which come within the jurisdiction of the United States of America or Canada; or

b)   to enforce a judgment obtained in any Court of the United States of America or Canada and any territories which come within the jurisdiction of the United States of America or Canada.

### 4.19 Nuclear Limitation

any **Loss** directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste, from the combustion of nuclear fuel or from the radioactive, toxic explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

### 4.20 War Limitation

any **Loss** arising from war, invasion, acts of foreign enemies, hostilities (whether war be declared or not) civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by, or under the order of, any government or public or local authority.

## 5. Conditions

### 5.1 Notification of Claims

The **Insured** shall as a condition precedent to its right to be indemnified under this policy give written notice to the **Insurer** of any **Claim** first made against the **Insured** as soon as practicable during the **Policy Period**.

All notifications must be in writing and properly addressed to the **Insurer** at the following address:

Attention:   American Home Assurance Company
c/o Guam Insurance Adjusters
1st Floor, Building A
Ada Plaza Center
173 Aspinall Center
Hagatna, GU, 96932

### 5.2 Limit of Liability

The total amount payable by the **Insurer** under this policy shall not exceed the **Limit of Liability**. Sub-limits and **Defence Costs** are part of that amount and are not payable in addition to the **Limit of Liability**. The inclusion of more than one **Insured** under this policy does not operate to increase the total amount payable by the **Insurer** under this policy.

Regardless of the number of years this cover shall continue in force and irrespective that it is or may be renewed and regardless of the number of premiums paid, the Limits of Liability as specified in the Schedules of each policy shall not accumulate from year to year or from Policy Period to Policy Period.

If two or more policies of insurance issued by the **Insurer** or any other member company of American International Group, Inc. (AIG) apply to the same **Claim** for which an **Insured** is liable, the maximum amount payable by AIG under all such policies shall not exceed the Limit of Liability of that policy referred to above which has the highest applicable Limit of Liability. Nothing contained herein shall be construed to increase the **Limit of Liability** of this policy.

### 5.3 Retention

The **Insurer** shall only pay for the amount of any **Loss** which is in excess of the **Retention**. For the avoidance of doubt, the **Retention** also applies to **Defence Costs**. The **Retention** is to be borne by the **Insured** and shall remain uninsured.

A single **Retention** amount shall apply to **Loss** arising from all **Claims** alleging a **Single Breach of Duty**.

## 5.4 Defence and Settlement of Claims

Subject to the **Limit of Liability** and the **Retention**, the **Insurer** has the right to defend any **Claim** brought against the **Insured** and the **Insured** will at their own cost render all reasonable assistance to the **Insurer** and co-operate in the defence of any **Claim**.

The **Insured** shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any **Loss** under this policy. They shall also give such information and assistance to the **Insurer** as the **Insurer** may reasonably require to enable it to investigate any **Loss** and determine the **Insurer's** liability under this policy.

As a condition precedent to the **Insurer's** liability for **Loss** arising out of any **Claim**, the **Insured** shall not admit or assume liability for, or make or agree to make any payment in connection with any **Claim**, agree to any settlement or judgment or incur any **Defence Costs** without the **Insurer's** prior written consent. Only those settlements, judgments and **Defence Costs** which have been consented to by the **Insurer** in writing shall be recoverable as **Loss** under this policy.

The **Insurer** may make investigation, conduct negotiations and with the written consent of the **Insured** settle any **Claim** where settlement has been agreed to by the parties being indemnified If consent to such settlement is withheld by any **Insured**, then the **Insurer's** liability for all **Loss** on account of that **Claim** shall not exceed the amount for which the **Insurer** could have settled the **Claim** plus the costs and expenses incurred to the date such settlement was recommended in writing to the **Insured.**

The **Insurer** has the right at any time after notification of a **Claim** to make a payment to the **Insured** of the **Limit of Liability** relating to that **Claim** and upon making such payment all liability of the **Insurer** to the **Insured** including liability in respect of costs and liability to defend any action in respect of that **Claim** shall cease.

## 5.5 Allocation of Defence Costs

If any **Claim** involves both covered matters and matters not covered by this policy, a fair and proper allocation of any **Defence Costs**, settlements or judgments shall be made between the **Insured** and the **Insurer** taking into account the relative legal and financial exposures attributable to covered matters and matters not covered under this policy.

If an allocation cannot be agreed between the **Insured** and the **Insurer**, then the **Insurer** shall, at the request of the **Insured**, resolve the matter by arbitration. The arbitrator shall be mutually agreed by the parties to the arbitration, or in the absence of mutual agreement appointed by the President of the Law Society or equivalent organisation in the region in which the **Defence Costs** were incurred. The costs of the arbitration shall be borne by the **Insurer**. The place of arbitration shall be in Guam in accordance with UNCITRAL Arbitration Rules as at present in force.

The allocation finally agreed or arbitrated shall be applied retrospectively to any **Defence Costs** incurred prior to the determination.

## 5.6 Arbitration Clause

If any dispute shall arise in connection with this policy or in respect of the quantum of claim hereunder or validity thereof, such dispute shall be settled in by arbitration in accordance with the UNCITRAL Arbitration Rules as at present in force. The place of arbitration shall be in the Territory of Guam. The appointing authority shall be the Superior Court of Guam. There shall be only one arbitrator.

## 5.7   Subrogation

If any payment is to be made under this policy in respect of a **Claim**, the **Insurer** shall be subrogated to all rights of recovery of the **Insured** whether or not payment has in fact been made and whether or not the **Insured** has been fully compensated for its actual loss. The **Insurer** shall be entitled to pursue and enforce such rights in the name of the **Insured**, who shall provide the **Insurer** with all reasonable assistance and co-operation in doing so, including the execution of any necessary instruments and papers. The **Insured** shall do nothing to prejudice these rights. Any amount recovered in excess of the **Insurer's** total payment shall be restored to the **Insured** less the cost to the **Insurer** of such recovery.

## 5.8   *Cancellation*

This Policy may be cancelled by the **Named Insured** by surrender of this Policy to the **Insurer** or by giving written notice of 30 days to the **Insurer** stating when thereafter-such cancellation shall be effective. This Policy may also be cancelled by or on behalf of the **Insurer** by 30 days notice in writing to the **Named Insured** on the basis of the **Insurer** receiving or retaining pro rata premium. If this Policy shall be cancelled by the **Named Insured, the Insurer** shall retain the customary short rate proportion of the premium hereon (The unexpired portion of the premium less the handling charges, subject to no *claim* or circumstance within the current policy year). Payment or tender of any unearned premium by **the Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

The Premium as stated in Item 11 of the Schedule shall be paid within 60 days from the inception date of the policy. If the Premium is not paid to **the Insurer** within the said 60 days, then there shall be no insurance cover whatsoever hereunder and the policy shall be deemed automatically voided from the date of inception.

Notice shall be deemed to be duly received in the course of post if sent by prepaid letter post property addressed to the **Named Insured's** last known address.

## 5.9   Authorisation

It is agreed that the **Named Insured** acts on behalf all **Insureds** with respect to the exercise of all their rights and the discharge of all their duties in respect of this policy, including but not limited to:

(a)    the notification of **Claims**;

(b)    the receiving of any notice of cancellation;

(c)    the payment of premium and the receipt of any refund of premium that may become due;

(d)    the negotiation and receipt of any Endorsement;

(e)    the receipt of all amounts payable by the **Insurer** under the policy.

## 5.10   Assignability

This policy and any rights under or in respect of it can not be assigned without the prior written consent of the **Insurer**.

## 5.11   Confidentiality

The **Insured** shall make all reasonable efforts not to disclose the existence of this policy to any person except to professional advisers or as required by law or court order.

## 5.12   Governing Law

This policy is to be construed, and any dispute in respect of this policy is to be determined, in accordance with the laws of Guam and the United States of America.

## 5.13 Policy Interpretation

Headings are included for convenience only and do not affect interpretation of the policy. Words and expressions in the singular shall include the plural and vice versa. Words in bold lettering have special meaning and are defined in the policy. Words that are not specifically defined in this policy have the meaning normally attributed to them.

## 5.14 Policy Validity

This policy is not binding upon the **Insurer** unless it is countersigned on the Schedule by an authorised representative of the **Insurer or its general agent, American International Underwriters, Limited.**

Specified Professions Professional Indemnity Insurance Policy

**This endorsement changes the policy. Please read it carefully.**

<u>Endorsement # 1</u>

This Endorsement, effective **Noon on 03/22/04** forms part of

Policy No.:        **E&O-04109**

Issued to:        **CASSIDY'S ASSOCIATED INSURERS INC.**

By:               **American Home Assurance Company**

## **FINANCIAL TRANSACTION EXCLUSION**

The Insurer shall not be liable for any claim directly or indirectly arising from, or in any manner related to the transfer of funds, monies, securities or any other negotiable instruments to or from any bank, banking firm, or financial institution.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as hereinabove set forth.

Specified Professions Professional Indemnity Insurance Policy

**This endorsement changes the policy. Please read it carefully.**

## Endorsement # 2

This Endorsement, effective **Noon on 03/22/04** forms part of

Policy No.:          **E&O-04109**

Issued to:           **CASSIDY'S ASSOCIATED INSURERS INC.**

By:                  **American Home Assurance Company**

---

## EXCLUDING ADDITIONAL BENEFITS AND DEFINITIONS

It is hereby understood and agreed that the following sections are deleted in their entirety from the Policy wording.

1. Section 2.1 Libel and Slander
2. Section 2.2 Intellectual Property Rights
3. Definition 3.1(b) Fraudulent or dishonest conduct
4. Definition 3.1(c) Loss of Documents.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as hereinabove set forth.

Specified Professions Professional Indemnity Insurance Policy

**This endorsement changes the policy. Please read it carefully.**

Endorsement # 3

This Endorsement, effective **Noon on 03/22/04** forms part of

Policy No.:       **E&O-04109**

Issued to:        **CASSIDY'S ASSOCIATED INSURERS INC.**

By:               **American Home Assurance Company**

## Binding Authorities Endorsement

It is understood and agreed that, this policy is extended to indemnify the Insured against any claim for breach of duty which may be made against them by reason of any negligent act, error or omission arising out of the operation of the binding authorities issued/granted to the Insured by Pacific Indemnity Insurance Company, American Contractors Indemnity Co., Gulf Insurance Company Associated Marine Insurers.

Nevertheless this policy shall not indemnify the Insured in respect of any claim made against them by the aforementioned by reason of any negligent act, error or omission committed in the course of the operation of the Binding Authority unless the underwriting or insurance company has obtained a judgement in any court against the Insured in respect of that claim.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as hereinabove set forth.

Specified Professions Professional Indemnity Insurance Policy

**This endorsement changes the policy. Please read it carefully.**

<u>Endorsement # 4</u>

This Endorsement, effective **Noon on 03/22/04** forms part of

Policy No.:        **E&O-04109**

Issued to:        **CASSIDY'S ASSOCIATED INSURERS INC.**

By:              **American Home Assurance Company**

## **WAR/ ACT OF WAR EXCLUSION**

It is hereby understood and agreed that this policy does not cover any loss in connection with any claim made against the insured arising out of, in whole or in part, directly or indirectly or resulting from or by:

1.  *war*, any act of *war*, civil *war*, invasion, insurrection, revolution, use of military power or usurpation of government of military power; or

2.  the intentional use of military force to intercept, prevent, or mitigate any known or suspected *terrorist act*; or

3.  any *terrorist acts*.

It is further agreed that the terms *war* and *terrorist acts* are respectively defined as follows:

a)  *War* shall mean war, whether declared or not, or any warlike activities including use of military force by any sovereign nation to achieve economic, geographic, nationalistic, political, racial, religious or other ends;

b)  *Terrorist Act(s)* shall mean any actual or threatened use of force or violence directed at or causing damage, injury, harm or disruption, or commission of an act dangerous to human life or property, against any individual, property or government, with the stated or unstated objective of pursuing economic, ethnic, nationalistic, political, racial or religious interests, whether such interests are declared or not. Robberies or other criminal acts, primarily committed for personal gain and acts arising primarily from prior personal relationships between perpetrator(s) and victim(s) shall not be considered *terrorist acts*.

A *terrorist act* shall also include any act which is verified or recognized by the Government of the United States of America, or the Government of the country in which the claim is made against the insured, as an act of terrorism.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as hereinabove set forth.

# EXHIBIT B



# American International Underwriters

Claims Management
175 Water Street, 15ᵗʰ floor
New York, NY 10038

Telephone: 212-458-3777 (Direct)
Facsimile: 212-458-2677
Email: alexis.rosenberg@aig.com

---

## BY U.S. MAIL & E-MAIL

March 8, 2007

Mike Cassidy
Property & Casualty Manager
Cassidy's Associated Insurers, Inc.
376 West O'Brien Drive
Agana, Guam 96910

Re:  Insured:         Cassidy's Associated Insurers, Inc.
     Claimant:        Ambyth Shipping & Trading
     Policy No.:      E&O-04109
     Policy Type:     ProfessionGuard: Specified Professions Professional Indemnity
                      Insurance Policy
     Policy Period:   March 22, 2006 to March 22, 2007
     Claim No.:       072300001A

Dear Mr. Cassidy:

Following our acknowledgement by email dated February 12, 2007, American International Underwriters ("AIU"), on behalf of American Home Assurance Company ("AHAC") sets forth the coverage position in the above-referenced matter. In doing so, AIU does not imply that any of the Claimants' allegations are true.

In brief, the complaint alleges that on February 10, 2005, a truck driven by Ambyth Shipping & Trading ("Ambyth") and owned by Mobil Oil Guam, Inc. ("Mobil") was in an accident. Pursuant to the Transportation Services Agreement ("the Agreement") between Ambyth and Mobil, Ambyth obtained insurance for itself and Mobil, which was included as an additional insured on the policy. Cassidy's Associated Insurers Inc. ("Cassidys") acted as the insurance broker for Ambyth in the procurement of the insurance from Pacific Indemnity Insurance Company ("PIIC"). The policy was to act as primary coverage to any other insurance that Mobil or Ambyth may have had in place. However, when the accident occurred PIIC denied coverage when Mobil's insurer sought reimbursement from Ambyth and PIIC for payments made on behalf of Mobil relating to the accident. Mobil's insurer filed suit against Ambyth and PIIC. Ambyth in turn seeks to hold Cassidys liable for failure to obtain the appropriate coverage. The Third Party Complaint alleges negligence and breach of contract.

Because the litigation is at an early stage and the relevant facts have not been developed, we have made only a preliminary review of this matter and must reserve all rights, including the right to apply exclusions or provisions in the Policy based upon developments in the litigation and investigation. Nonetheless, we provide the following comments, some of which are may be based on the allegations in the Third Party Complaint. In doing so, we do not intend to imply that we believe the allegations to be true.

The Professionguard: Specified Professions Professional Indemnity Insurance Policy no. E&O-04109 has the effective dates from March 22, 2006 to March 22, 2007. The limit of liability is $1,000,000 any one Claim and in the aggregate for all Claims during the Policy Period including defense costs. The deductible is $50,000 each and every Claim inclusive of defense costs. ("the Policy")

Section 1 of the Policy sets out the Insuring Clause, which states:

"The **Insurer** will pay on behalf of the **Insured** the **Loss** which the **Insured** is legally liable to pay by reason of any **Claim** first made against the **Insured** and notified in writing to the **Insurer** during the **Policy Period** for a **Breach of Duty** by reason of any **Wrongful Professional Act** committed or allegedly committed by the **Insured** on or after the **Retroactive Date** and solely in providing **Professional Services** arising out of the **Insured's** business activities as shown in the Schedule."

Based on the Third Party Complaint, it appears that Cassidys placed the requisite insurance for Ambyth in or around the Fall of 2004. Please provide documentation in respect of the placement of insurance on behalf of Ambyth. Bearing in mind the retroactive date, the insuring clause would extend to wrongful professional acts committed on or after March 22, 2004.

Please also refer to Section 3.8 of the Policy which defines "Loss". Loss does not include: the costs incurred by the Insured in complying with any order or agreement for injunctive or non-monetary relief; non-compensatory damages including punitive, aggravated or exemplary damages; and, any amount which is uninsurable pursuant to the laws of Guam in which this policy is issued. Please refer to the Policy for further limitations under the definition of "Loss".

Assuming that the Insuring Clause has been met, we next draw your attention to the exclusions in Section 4 of the Policy. A reservation of right is in place for the following three exclusions.

## "4.3 Property Damage

arising out of, based upon, attributable to or in any way connected with:

(a)     damage to or destruction of any tangible property including the loss of use thereof;

(b)     the loss of use of tangible property which has not been damaged or destroyed."

Please take note of 4.3(a) above, which may exclude coverage for any damage to or loss of use of any property including but not limited to motor vehicles involved in the accident.

## "4.6 Prior Known Facts

arising out of, based upon, attributable to or in any way connected with any:

(a)     actual or alleged facts that might give rise to a **Claim** which were known to the **Insured** prior to the commencement of the **Policy Period**;

(b)     actual or alleged facts which were notified or which can be notified under any policy in force prior to the commencement of the **Policy Period**;

(c)     pending or prior to litigation, or litigation derived from the same or essentially the same facts as might be alleged in such pending or prior litigation, as at the commencement of the Policy Period.

For the purpose of this Exclusion, the term litigation includes but is not limited to any civil, criminal, administrative or regulatory proceeding as well as any official investigation, examination, inquiry, arbitration or adjudication. "

The exclusions 4.6(a) to (c) is reserved pending further exploration into the timing and the extent of awareness by Cassidys of facts which gave rise to the present claim. Please provide details and any supporting documentation as to when Cassidys first learned that PIIC denied coverage on any claim(s) related to the auto accident on February 10, 2005. Please also provide us with correspondence exchanged between Cassidy's and Ambyth or PIIC.

### "4.11 Assumed Liability

any liability assumed by an Insured under any contract, arrangement or understanding except to the extent that the Insured would have been legally liable in the absence of such contract, arrangement or understanding. "

Ambyth alleges breach of contract. This cause of action is not covered under the policy unless the basis for any legal liability of Cassidys for damages is separate and apart from any contractual obligations that may be owed by Cassidys to Ambyth.

Please bear in mind that as a condition precedent to AHAC's liability for any Loss arising from this claim, the Insured is not to admit or assume liability, or to make or agree to any payment, settlement or judgment, or to incur Defense Costs, without the prior consent of AHAC. (See Section 5.4 of the Policy)

Where a Claim involves both covered and noncovered matters, a fair and proper allocation of any defense costs, settlements or judgments shall be made between the Insured and Insurer taking into consideration the legal and financial exposures attributable to covered matters and matters not covered under the Policy. (Please refer to Section 5.5 of the Policy.) To the extent that the previously mentioned exclusions apply, an appropriate allocation would be in order.

We reserve the right to re-evaluate, amend and revise our coverage position as the matter develops and information arises that warrants such reconsideration.

Subject to the reservations herein, we will provide a defense under the Policy. There is a deductible of $50,000. Please provide the following:
        -the name & contact information of defense counsel;
        -copies of legal invoices;
        -detailed status of the litigation; and,
        -relevant documents pertaining to the litigation.

Do not hesitate to contact me if you wish to discuss the contents of this reservation of rights letter.

Regards, ·

*Alexis Rosenberg*

Alexis Rosenberg
Claims Analyst – Professional Liability
American International Underwriters – Claims Division
175 Water Street, 15th Floor
New York, NY 10038
212.458.3777
212.458.2677 Fax