CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Ambyth Shipping & Trading, Inc. dba Ambyth Trucking

**FILED**
DISTRICT COURT OF GUAM

NOV 30 2007

JEANNE G. QUINATA
Clerk of Court

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>          Plaintiff,<br><br>vs.<br><br>PACIFIC INDEMNITY INSURANCE COMPANY and AMBYTH SHIPPING & TRADING, INC., dba AMBYTH TRUCKING,<br><br>          Defendants. | CIVIL CASE NO. 06-00017<br><br><br>**DEFENDANT/THIRD-PARTY/CROSS-CLAIM PLAINTIFF AMBYTH SHIPPING & TRADING'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANDREW MILLER; EXHIBITS A-C; DECLARATION OF SERVICE** |
| AMBYTH SHIPPING & TRADING, INC. dba AMBYTH TRUCKING,<br><br>        Third-Party/Cross-Claim Plaintiff,<br><br>vs.<br><br>CASSIDY'S ASSOCIATED INSURERS, INC.<br><br>        Third-Party/Cross-Claim Defendant. | |

C:\Windows\Temp\ND\Motion for Summary Judgment (1).doc



Defendant/Third-Party/Cross-Claim Plaintiff Ambyth Shipping & Trading hereby moves the Court for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. This Motion is supported by the attached Memorandum of Points and Authorities and Exhibits A through C, the attached Declaration of Andrew Miller, and the records and files for this action.

DATED: Hagåtña, Guam, November 30, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Defendant/Cross-Claimant/
Third-Party Plaintiff Ambyth Shipping and
Trading, Inc. dba Ambyth Trucking

4843-1883-1361.2.052013-00003

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff National Union Fire Insurance Company of Pittsburg, PA ("National Union") has filed a breach of contract claim against Ambyth Shipping & Trading, Inc. ("Ambyth") contending Ambyth failed to obtain liability insurance that was primary to insurance obtained by Mobil Oil Guam, Inc. ("Mobil") pursuant to a Transportation Services Agreement ("TSA") between Ambyth and Mobil.  Under the TSA, Ambyth agreed, among other things, to supply Mobil with drivers for Mobil's fuel tank trucks and to obtain liability insurance with Mobil as an additional insured on the policy, said insurance to be primary to other insurance which might provide coverage for Mobil for losses arising out of TSA trucking operations.  National Union, rather blithely, contends Ambyth did not obtain such primary coverage.

However, in the language of National Union's Second Amended Complaint and in the plain language of the policy that Ambyth obtained, it is undisputed that Ambyth fulfilled its contractual obligation to Mobil or to National Union[1] by obtaining a policy which provides the required primary coverage for trucking operations carried out under the TSA.  Furthermore, the policy obtained by Ambyth expressly provides that the TSA is the insured contract.

Because it is undisputed that Ambyth fulfilled any contractual obligation to obtain a primary insurance policy, summary judgment is proper in favor of Ambyth on National Union's claims.

## II.  BACKGROUND

### A.  THE TRANSPORTATION SERVICES AGREEMENT AND THE INSURANCE POLICY

On or about September 29, 2004, Ambyth and Mobil entered into a Transportation

---

[1] National Union claims to be a third party beneficiary.  Ambyth does not discuss National Union's claim as a third party beneficiary in this Motion for Summary Judgment, and does not waive its position that National Union is not a third party beneficiary to the TSA.

4843-1883-1361.2.052013-00003

Services Agreement, under which Ambyth agreed, among other things, to provide drivers to Mobil to drive Mobil-owned fuel tank trucks. Miller Decl., ¶ 3; Ex. A. Under part 14.1(f) of the Transportation Services Agreement, Ambyth agreed to obtain certain insurance for itself and Mobil as an additional insured, and which would be primary as to all other insurance that may provide Mobil or Ambyth with coverage. Miller Decl., ¶ 6; Ex. A. Ambyth purchased a policy that would meet the requirements imposed on Ambyth under the TSA from Pacific Indemnity Insurance Company ("Pacific Indemnity"). Miller Decl., ¶ 4.

Under the policy, Pacific Indemnity agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Ex. B. Coverage under the policy extended to Ambyth and to Mobil as well. Ex. C.

The policy expressly established that the coverage provided *primary insurance*: "'Regardless of the provisions of Paragraph a. above,[2] this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract'." Ex. B, § IV.B.5.c (footnote added). The policy defines an "insured contract" as including "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for 'bodily injury' or property damage to the third party or organization." Ex. B., § V.G.5. Section IV.B.5.c of the policy confirmed to Ambyth that the policy was primary to all other insurance that may provide Ambyth, and Mobil as an additional insured, with coverage. Miller Decl., ¶ 6.

B.    THE ACCIDENT

On February 10, 2005, a Mobil-owned tank truck crashed and burned while en route to

---

[2] Paragraph a states: "For any covered "auto" you own, this Coverage Form provides primary insurance." Ex. B, § IV.B.5.a.

4843-1883-1361.2.052013-00003

deliver thousands of gallons of motor fuel to certain locations on Guam. Miller Decl., ¶ 7. John Query, a driver who had been hired by Ambyth, was operating the truck. Miller Decl., ¶ 8.

At the time of the crash, Mobil had its own insurance policy with National Union and sought coverage under that policy. Miller Decl., ¶ 9.

At the time of the crash, it is undisputed that the insurance policy Pacific Indemnity had issued to Ambyth with Mobil as an additional insured was in force. Miller Decl., ¶ 10.[3]

## C. THIS LAWSUIT

National Union has brought a third party beneficiary claim against Ambyth. *See* Second Am. Compl. for Declaratory Relief and Reimbursement, filed Jan. 9, 2007, at ¶¶ 52-57. National Union claims Ambyth breached its obligation to National Union, as a third party beneficiary of the TSA, by failing to cover Ambyth and Mobil with liability insurance that was primary as to all other insurance that may provide Mobil and Ambyth with coverage for losses arising from operations performed under the TSA. Thus, National Union's sole claim against Ambyth is a breach of contract claim, which is entirely dependent on the critical fact of whether Ambyth breached any obligation to Mobil or to National Union by obtaining primary insurance coverage from Pacific Indemnity. The undisputed facts show that Ambyth did not breach any contractual obligation with Mobil or National Union.

## III. LEGAL DISCUSSION

### A. SUMMARY JUDGMENT

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this Motion, it is evident that National Union has failed

---

[3] The Declaration of Andrew Miller discusses an Exhibit D, which is not being attached to this Motion. Ambyth asks the Court to disregard the reference to "Exhibit D" in the Miller Declaration.

4843-1883-1361.2.052013-00003

to create any genuine issue of material fact in both the pleadings and the record before the Court.

B.    IT IS UNDISPUTED THAT THE AMBYTH POLICY IS PRIMARY

Guam law governs this insurance contract dispute. *See generally Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999) (court applies state law to resolve state contract dispute). Terms of insurance contracts are interpreted so as to give such terms their plain and ordinary meaning. *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Housing and Urban Renewal Auth.*, 2003 Guam 19, ¶¶ 21, 36 n.17. This is hornbook contracts law, as well as the law in Guam: "The words of a contract are to be understood in their ordinary and popular sense . . . ." 18 G.C.A. § 87110. *See also Bank of the W. v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992) (When the plain language of an insurance contract is "clear and explicit, it governs."). The terms of the contract must also be "interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." 18 G.C.A. § 87102. Also the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 18 G.C.A. § 87104.

National Union's claim against Ambyth concerns Ambyth's alleged breach of an obligation to cover Mobil with liability insurance that was primary as to all other insurance that may provide Mobil and Ambyth with coverage. To prove this alleged breach, National Union must demonstrate that the policy Ambyth purchased from Pacific Indemnity is not a primary policy. However, the simple, undisputed and indisputable fact is that Ambyth obtained a policy that is ***expressly primary and accordingly compliant with the terms of the TSA.***

Take for example the exceedingly plain language of the policy at issue, which states that the policy is "primary for any liability assumed under an 'insured contract.'" Ex. B, § IV.B.5.c. A "primary insurer" is one whose coverage of a given loss is at the first level of loss. Couch on Ins., § 1.4. National Union's claims fail because the plain language of the policy show that

Ambyth fulfilled its contractual obligation to obtain an insurance policy that provided Ambyth and Mobil with primary coverage.

Indeed, the pleadings themselves confirm that the issue of the Pacific Indemnity policy being primary is beyond dispute. Ambyth has already admitted the allegation in National Union's Second Amended Complaint that "Pacific Indemnity's liability insurance coverage is primary as to all other insurance that may provide Mobil and Ambyth with coverage." Second Am. Compl., ¶ 26; Ambyth's Answer, ¶ 26. National Union's allegation in the Second Amended Complaint defeats its own breach of contract claim. Accordingly, amongst the pleadings there is no dispute before the Court, let alone a genuine issue of material fact based on the record before the Court.

As the Ambyth policy is undisputedly, as well as admittedly, primary, there is no genuine issue of material fact for the trier of fact to determine. As a matter of law, Ambyth did not breach any contract obligation owing to Mobil under the TSA or to National Union, and summary judgment is proper in Ambyth's favor.

## IV.  **CONCLUSION**

The plain, undisputed language of the insurance policy obtained by Ambyth demonstrates that it obtained an insurance policy that is primary as to all other insurance that may provide Mobil and Ambyth with coverage. Ambyth is entitled to summary judgment on National Union's claims of breach of contract.

4843-1883-1361.2.052013-00003

DATED: Hagåtña, Guam, November 30, 2007.

CARLSMITH BALL LLP

_Elyze J. McDonald_

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Defendant/Cross-Claimant/
Third-Party Plaintiff Ambyth Shipping and
Trading, Inc. dba Ambyth Trucking

4843-1883-1361.2.052013-00003

## DECLARATION OF ANDREW MILLER UNDER 28 U.S.C. SECTION 1746(2)

I, ANDREW MILLER, declare under penalty of perjury that the following statements are true and correct:

1.     I have personal knowledge of the facts stated in this Declaration except as otherwise indicated.

2.     I am the Group General Manager of Ambyth Shipping & Trading ("Ambyth").

3.     On or about September 29, 2004, Ambyth and Mobil Oil Guam, Inc. entered into a Transportation Services Agreement ("TSA"), under which Ambyth agreed, among other things, to provide a drivers to Mobil to drive Mobil-owned fuel tank trucks. Attached hereto as Exhibit A is a true and correct copy of the TSA.

4.     Ambyth approached Cassidy's Associated Insurers, Inc. ("Cassidy's") for a policy which would meet the insurance requirements Mobil imposed on Ambyth under the TSA, and Cassidy's obtained such a policy which was issued by Pacific Indemnity. Attached hereto as Exhibit B is a true and correct copy of the policy issued to Ambyth.

5.     Attached hereto as Exhibit C is a true and correct copy of an Endorsement Change to the Policy, which added Mobil as an additional insured.

6.     Section § IV.B.5.c of the insurance policy (Ex. B) confirmed Ambyth's understanding that it purchased a policy that was primary to all other insurance that may provide Ambyth, and Mobil as an additional insured, with coverage, as required under the TSA.

7.     On February 10, 2005, a Mobil-owned tank truck crashed and burned while en route to deliver thousands of gallons of motor fuel.

8.     John Querry, a driver who had been hired by Ambyth, was operating the truck pursuant the TSA.

9. At the time of the crash, Mobil had its own insurance policy with National Union and sought coverage under that policy.

10. At the time of the crash, the insurance policy Pacific Indemnity issued to Ambyth was in force.

11. Attached hereto as Exhibit D is a true and correct copy of a January 16, 2004 Memorandum issued from Cassidy's to Ambyth regarding the policy at issue.

12. In accordance with 28 U.S.C. Section 1746(2), I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this _30_ day of November 2007.

ANDREW MILLER

4848-1638-9634.1.052013-00003

# EXHIBIT A

# TRANSPORTATION SERVICES AGREEMENT

**between**

## MOBIL OIL GUAM INC.

**and**

## AMBYTH SHIPPING & TRADING, INC.
## dba AMBYTH TRUCKING

**covering**

## BULK FUEL HAULING

Agreement No.: SA-11551 OP

# TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE |
|---------|-------|------|

ARTICLE 1 - AGREEMENT SCOPE ..................................................................... 1
ARTICLE 2 - TERM AND SURVIVORSHIP ............................................................ 1
ARTICLE 3 - DEFINITIONS .............................................................................. 1
ARTICLE 4 - CONTRACTOR'S GENERAL OBLIGATIONS ........................................ 2
ARTICLE 5 - WARRANTIES ............................................................................. 3
ARTICLE 6 - SUBCONTRACTORS ...................................................................... 3
ARTICLE 7 - CHANGES ................................................................................... 4
ARTICLE 8 - INDEPENDENT CONTRACTOR ........................................................ 4
ARTICLE 9 - PAYMENT, TAXES AND INVOICING ................................................ 5
ARTICLE 10 - DEFICIENT WORK; ASSUMPTION OF SERVICES ............................. 5
ARTICLE 11 - SUSPENSION ............................................................................ 6
ARTICLE 12 - TERMINATION ........................................................................... 6
ARTICLE 13 - DISTRIBUTION OF RISK, RELEASE AND INDEMNITY ........................ 7
ARTICLE 14 - INSURANCE .............................................................................. 9
ARTICLE 15 - GOVERNING LAW AND DISPUTE RESOLUTION ............................. 10
ARTICLE 16 - CONFIDENTIAL INFORMATION ................................................... 10
ARTICLE 17 - OWNERSHIP OF INVENTIONS AND DOCUMENTS ........................... 11
ARTICLE 18 - USE OF TRADEMARK AND PUBLICITY ......................................... 12
ARTICLE 19 - AUDIT .................................................................................... 12
ARTICLE 20 - BUSINESS STANDARDS .............................................................. 13
ARTICLE 21 - ILLEGAL INFORMATION BROKERING ............................................ 14
ARTICLE 22 - ASSIGNMENT OF AGREEMENT ................................................... 15
ARTICLE 23 - DESIGNATED REPRESENTATIVE AND NOTICES ............................. 15
ARTICLE 24 - ALCOHOL AND DRUGS .............................................................. 15
ARTICLE 25 – SAFETY, HEALTH AND ENVIRONMENT ........................................ 15
ARTICLE 26 - RIGHT OF REMOVAL ................................................................. 19
ARTICLE 27 - FORCE MAJEURE ...................................................................... 19
ARTICLE 28 - CENTURY DATE COMPLIANCE WARRANTY .................................... 19
ARTICLE 29 - AMENDMENTS .......................................................................... 20
ARTICLE 30 - PRECEDENCE ........................................................................... 20
ARTICLE 31 - MISCELLANEOUS ...................................................................... 20
ARTICLE 32 – ACCESS TO COMPUTING RESOURCES AND INFORMATION ............. 20
ARTICLE 33 – ADDITIONAL REQUIREMENTS .................................................... 21
ARTICLE 34 - ENTIRE AGREEMENT ................................................................. 22
APPENDIX 1 - AGREEMENT PARTICULARS ...................................................... 23
1.0    GENERAL ......................................................................................... 25

EXHIBIT

A    Scope of Works
     Attachements to Scope of Works
B    Calculation of Payment for Services and Invoicing
C    Additional Articles

This Agreement is effective as of the Effective Date set out in Appendix 1, and made between **Mobil Oil Guam Inc.** having an office at 642 East Marine Drive Hagatna Guam, 96910 (hereinafter Company) and **Ambyth Shipping & Trading, Inc. dba Ambyth Trucking** having an office at 193 Rojas Street, Harmon Industrial Park, Tamuning, Guam 96913 (hereinafter Contractor).

Company and Contractor each in consideration of the undertakings, promises and agreements of the other as set forth herein, hereby agree as follows:

## ARTICLE 1 - AGREEMENT SCOPE

The purpose of this Agreement is to define the terms and conditions for the provision of the Services as specifically set out in Exhibit A.

## ARTICLE 2 - TERM AND SURVIVORSHIP

**2.1** **Term.** The Term of this Agreement begins and is effective from the date first written above and shall terminate at the close of business on the date set out in Appendix 1, unless terminated earlier as permitted by this Agreement.

**2.2** **Survivorship.** The provisions of this Agreement that by their nature continue shall survive any expiration or termination of this Agreement.

## ARTICLE 3 - DEFINITIONS

*For the purpose of this Agreement, the following words and phrases shall have the meaning stated below:*

**3.1** **"Affiliate"** means (a) Exxon Mobil Corporation or any parent of Exxon Mobil Corporation, (b) any company or partnership in which Exxon Mobil Corporation or any parent of Exxon Mobil Corporation now or hereafter (1) owns or (2) controls, directly or indirectly, more than fifty percent (50%) of the ownership interest having the right to vote or appoint its directors or functional equivalents ("Affiliated Company"), (c) any joint venture in which Exxon Mobil Corporation, any parent of Exxon Mobil Corporation, or an Affiliated Company is the operator, (d) any successor in interest to (a) through (c) above, and (e) Koykuto Petroleum Industries Ltd.

**3.2** **"Agreement"** means Principal Document and the Exhibits indicated in the Table of Contents.

**3.3** **"Company"** means the legal entity identified as such in the first paragraph of the Agreement.

**3.4** **"Competence"** means the qualifications, training, expertise, experience, capability and specialized knowledge to perform Services in a good and workmanlike manner and within all accepted standards for the industry.

**3.5** **"Consequential Loss"** means any loss or anticipated loss of profit, loss or anticipated loss of revenue, business interruption, loss of use of any equipment, loss of any contract or other business opportunity and any other indirect loss of a similar nature.

**3.6** **"Contractor"** means (1) the legal entity identified in the Principal Document and, where the context so permits, (2) any company in which that legal entity now or hereafter (a) owns or (b) controls, directly or indirectly, more than fifty percent (50%) of the stock having the right to vote or appoint its directors and (3) Contractor's representatives that are responsible for supplying goods or performing Services in accordance with the terms of this Agreement.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.   Page 1 of 84   Agreement No. SA-11551 OP
Transportation Services   Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017   Document 77   Filed 11/30/2007   Page 14 of 35

**3.7** **"Gross Negligence"** is defined by the Law governing this Agreement; however, if such Law does not define the term "gross negligence", it means any act or failure to act (whether sole, joint or concurrent) which seriously and substantially deviates from a diligent course of action or which is in reckless disregard of or indifference to the harmful consequences.

**3.8** **"Law"** means all applicable laws of the jurisdiction in its broadest sense including without limitation the following: constitutional law, civil law, common law, international law, equity, treaties, statutes, decrees, edicts, codes, orders, rules, ordinances and regulations of any local, municipal, territorial, provincial, federated, national or any other duly constituted governmental authority or agency.

**3.9** **"Personnel"** means any person furnished by Contractor or its Subcontractors to perform any of the Services.

**3.10** **"Principal Document"** means this document, executed by Company and Contractor, and comprising Articles 1 through 34 and including Appendix 1.

**3.11** **"RCTI"** has the meaning ascribed to that term in Sub-article 9.5 g)

**3.12** **"Services"** means the Services described in Exhibit A, including the supervision thereof and any ancillary goods or other services incidental thereto.

**3.13** **"Subcontractors"** means any Subcontractor, supplier, agent or materialman providing materials or services to Contractor for the purpose of performing Services under this Agreement.

**3.14** **"Willful Misconduct"** is defined by the Law governing this Agreement; however, if such Law does not define the term "willful misconduct", it means an intentional disregard of good and prudent standards of performance or of any of the terms of this Agreement.

**3.15** **"Work Site"** means the area of any physical site where Services are actually performed by Contractor and/or its Subcontractors provided (1) such site(s) is owned or controlled by Company and (2) Company made the area available to Contractor to perform Services and related activities.

## ARTICLE 4 - CONTRACTOR'S GENERAL OBLIGATIONS

**4.1** Contractor shall perform Services in accordance with the terms and conditions of Principal Document and the Exhibit A Scope of Work.

**4.2** Contractor shall commence Services promptly upon entering into this Agreement or upon being notified by Company, and shall perform Services to the reasonable satisfaction of Company (i) with diligence until Services are completed and (ii) in accordance with sound and generally accepted industry standard practices for said Services, subject to the terms and conditions of this Agreement.

**4.3** Contractor shall consult with and advise Company at no additional cost, with respect to questions arising in connection with this Agreement and cooperate with Company and its authorized representatives.

**4.4** Contractor shall be responsible for interpretations made by Contractor in translating Company's data, information and requirements into Services and for work performed by Contractor based on data or information not contained in the Exhibit A Scope of Work.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.    Page 2 of 84    Agreement No. SA-11551 OP
Transportation Services    Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 15 of 35

## ARTICLE 5 - WARRANTIES

**5.1    Representations and Warranties.**  Contractor represents and warrants that it:

a)    has the Competence to perform the Services;

b)    has or shall obtain the necessary tools, equipment and personnel to provide the Services;

c)    shall maintain and use all tools and equipment in accordance with manufacturer's specifications and recommendations and good engineering and operational practices;

d)    has or shall obtain, at its expense, before performing any Services all the necessary registrations, certificates, permits, licenses and authorizations to conduct business and perform the Services;

e)    shall perform all Services in accordance with Law;

f)    shall perform all Services in good faith, promptly, with due diligence and Competence;

g)    fully comprehends the requirements and contingencies for providing Services and it shall examine the Work Site for any additional or special requirements and contingencies prior to performing Services; and

h)    shall ensure that Services, materials and equipment provided will meet any descriptions or specifications set out in Exhibit A at all times except to the extent of normal wear and tear and/or abuse by personnel other than Contractor and its Subcontractors.

**5.2    Contractor's Duty for Compliance of Services under this Agreement.**  Contractor represents and warrants that it shall not perform any aspect of the Services that it knows or should know cannot be performed in conformity with the provisions of this Agreement. If Contractor determines that it cannot perform Services in conformity with those provisions, Contractor shall immediately advise Company and work with Company to develop a mutually satisfactory resolution. Contractor further represents and warrants that it shall ascertain whether any drawings and specifications applicable to the Services are at variance with Law or with good engineering and operational practices before beginning any Services. Contractor shall immediately notify Company in writing of any such variance and ensure that the necessary changes are made before proceeding with the part of the Services affected.

**5.3    Additional Warranty.(where applicable)**  Without limiting the rights that Company may otherwise have at Law and in addition to the other warranties granted, Contractor warrants that all Services performed and any materials and equipment provided in connection with the Services shall be free from defect or deficiency for <u>one (1) year</u> from the date of completion of the Services. If Company discovers any defect or deficiency during this warranty period, and Company has notified Contractor of the defect or deficiency either during the warranty period or within a reasonable period of time after the end of this warranty period, Contractor, at its sole expense, shall at Company's option promptly repair or replace the defect or deficiency (including the provision of all labor, materials and other incidental Services to effect this correction of the defect or deficiency). Any Services provided under this Sub-Article to correct any defect or deficiency shall be warranted on the same basis as provided in this Sub-Article for the longer of (a) the balance of the <u>one year</u> warranty period or (b) <u>six (6)</u> months from the date of completion of the repair or replacement.

**5.4    Warranties of Others.**  Contractor shall use its best endeavours to ensure that all warranties provided by Subcontractors and manufacturers are assigned to Company. If any warranty cannot be so assigned, Contractor shall use its best endeavours to make that warranty available for the applicable Company's benefit. Contractor shall deliver a copy of each written warranty provided by Subcontractors and manufacturers to Company. The warranties under this Sub-Article shall be in addition to any others provided under this Agreement or otherwise under Law.

## ARTICLE 6 - SUBCONTRACTORS

Services shall be performed solely by Contractor or by those Subcontractors that Company may from time to time allow by its prior written approval. No approval shall relieve Contractor of any of its obligations under this Agreement. Contractor shall be responsible to Company for Services performed by its

Subcontractors to the same extent it is responsible for activities performed by Contractor. Contractor shall ensure that its contracts with its Subcontractors contain provisions which are in conformity with and no less stringent than the provisions of this Agreement. No provision whatsoever of this Agreement will be deemed to create a contractual relationship between Company and Subcontractor, nor between Company and employees of Contractor or Subcontractor. Notwithstanding the provisions of this Article, any person or other entity not approved as a Subcontractor and used by Contractor to provide Services under this Agreement hereunder shall be deemed a Subcontractor only for the purposes of Contractor's obligations and covenants under this Agreement. Contractor shall, at Company's request at any time, provide Company with a list of all Subcontractors, if any, providing Services.

## ARTICLE 7 - CHANGES

**7.1    Changes.** Company shall have the right, without additional consent from Contractor, to:
    **a)**    revise the Exhibit A Scope of Work within the general scope of work set forth therein, including but not limited to: (i) requiring additional services of Contractor and directing omission of part of Services previously authorized, and (ii) making final decisions on the interpretation of any specifications, drawings, and documents included in the Exhibit A Scope of Work or otherwise furnished by Company to Contractor and on matters where such documents permit alternatives or are not specific. Upon notification of such revision, Contractor shall promptly revise Services accordingly.
    **b)**    reject Services in whole or in part which do not conform to the Exhibit A Scope of Work.

**7.2    Change Orders**
    **a)**    Unless this Agreement provides otherwise, Company shall issue a change order when it revises the Exhibit A Scope of Work or elements of Services already completed or being performed in accordance with the Exhibit A, requires additional services of Contractor or directs omission of part of Services previously authorized, provided any of the following change order criteria is satisfied:  (i) Contractor's costs for performing Services are affected thereby, or (ii) the time required for performing Services is affected thereby or (iii) the scope of Services or execution approach is affected thereby. If any of the foregoing criteria is satisfied, Company shall authorize Contractor to prepare and Contractor shall prepare an estimate of the effects on costs and of completion of Services. After Contractor and Company agree on the reasonable effects, Company shall issue a change order adjusting one or more aforesaid items unless this Agreement provides otherwise.
    **b)**    A change order shall not be issued, when (i) revisions in Services already performed by Contractor are required to achieve compliance with the Exhibit A Scope of Work or to correct errors, omissions or work not in accordance with the requirements of Sub-Article 4.2 and Article 5, (ii) Contractor has not complied with a requirement of this Agreement, or (iii) Contractor's performance was affected by another cause, including Contractor's fault or negligence.

## ARTICLE 8 - INDEPENDENT CONTRACTOR

In performing Services and other obligations under this Agreement, Contractor shall be an independent contractor and not the agent or employee of Company. The relationship of employer and employee shall not exist between Company and Contractor or any of Contractor's employees, if any. Contractor acknowledges and agrees that, with respect to any Services provided under this Agreement, neither Contractor nor any of its employees is eligible to participate in and shall not receive any benefits from any employee benefit plan sponsored by Company and/or its affiliates. Services shall be performed under the supervision and control of Contractor, and Company shall have no authority to supervise Contractor's employees, representatives or Subcontractors. Contractor shall have no authority to make statements, representations or commitments of any kind or take any other action binding on Company, except as specifically provided in this Agreement. It is expressly agreed that it is not the purpose or intention of this Agreement to create, nor shall the same be construed as creating, any partnership or joint operation between Company and Contractor.

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 17 of 35

## ARTICLE 9 - PAYMENT, TAXES AND INVOICING

**9.1**   **Payment.** Contractor shall invoice Company (unless the parties have agreed to enter into a RCTI agreement) and Company shall pay Contractor the prices specified in Exhibit B for Services that Contractor provides under this Agreement.

**9.2**   **Taxes.** Contractor shall:

a)   pay or cause to be paid when due (i) taxes and fees imposed by reason of the performance of Services by Contractor or Subcontractors, including, but not limited to sales, excise, storage, consumption, GRT; licenses, permit and registration fees, and income, profit, corporation, capital gains, franchise, and personal property taxes; but excluding fees for any licenses and permits which may be obtained by Company in accordance with any provisions of this Agreement; (ii) employment taxes and contributions imposed by applicable law, or trade union contracts or regulations, with respect to or measured by compensation (wages, salaries, or other) paid to employees of Contractor or Subcontractors including, but not limited to, taxes and contributions for employment compensation insurance, old age benefits, welfare funds, pensions and annuities, redundancy payments, national insurance contributions, social security benefits and disability insurance; and (iii) import/export license fees and import/export taxes and duties on services, equipment and materials, and construction tools, equipment and supplies imported or exported by Contractor or Subcontractors;

b)   defend, indemnify, and hold Company harmless from liability to any competent authority resulting from Contractor's or Subcontractors' failure to (I) make timely payment of or pay any of the above, including interest, penalties and any other liability arising from such failure, or (ii) comply with the reporting, filing or other procedural requirements with respect to their payment; and

c)   develop procedures and make reasonable efforts to minimize the sales and use tax on purchases of equipment, materials and services where the cost is reimbursable by Company to Contractor under this Agreement.

**9.3**   **Immunity and Exemption.** If Contractor fails to obtain the immunity or exemption from taxes or duties to which Contractor or Subcontractors are entitled under Law, or fails to obtain a refund or credit, including interest, for any such taxes or duties paid, Company shall not be responsible for the reimbursement to Contractor of such taxes and duties.

**9.4**   **Withholding Taxes.** Without liability to Contractor, Company shall withhold income and other taxes from payments due to Contractor under this Agreement to the extent that such withholding is required by Law. Payment by Company to the appropriate governmental office of the amount of money so withheld will be deemed to have been made on behalf of Contractor hereunder for the amount of such payment as if the payment had been made to Contractor and will relieve Company of any further obligation to Contractor with respect to the amount so withheld.

## ARTICLE 10 - DEFICIENT WORK; ASSUMPTION OF SERVICES

**10.1**   At Company's option, Contractor shall correct promptly and to Company's satisfaction any deficiency in Services performed under this Agreement. Upon notice of such deficiency, Contractor agrees to promptly provide, at no cost to Company, the additional services necessary to correct said deficiency to Company's satisfaction.

**10.2**   **Assumption of Services.** Contractor agrees that if, in the opinion of Company, Contractor fails at any time during the performance of Services to provide the labor, supervision, tools, equipment (excluding delivery equipment) or materials necessary for the prompt performance of Services, or if Contractor

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.       Page 5 of 84                    Agreement No. SA-11551 OP
Transportation Services                                                                          Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017     Document 77     Filed 11/30/2007     Page 18 of 35

breaches this Agreement in whole or in part or fails to use diligence in the performance thereof, Company may, at its election and without prejudice to any other remedies available to it, take over and perform or obtain another contractor to take over and perform all or any part of Services then remaining unperformed. If Company takes over completion of Services, or obtains another contractor to do so, Company's sole obligation shall be to pay Contractor, upon completion of Services and subject to the other provisions of this Agreement that reduce or suspend payment, the lesser of either (1) the percentage of any moneys due which represents the percentage of Services satisfactorily completed by Contractor under this Agreement, or (2) the lump sum price under this Agreement less all costs and expenses incurred by Company in completing Services.

Notwithstanding the foregoing, if Company exercises this right, Company or its designee shall have the right but not the obligation to use all or any part of Contractor's tools and equipment then in use on the job but shall pay Contractor a reasonable rental for the use of tools and equipment during the period of use by Company or its designee and shall return same to Contractor upon completion of the job in as good condition as when taken over by Company, ordinary wear and tear excepted. Company shall not be liable for any costs, claims, damages or liabilities whatsoever of Contractor or Subcontractors, including, without limitation, Consequential Loss, punitive or exemplary damages, or reimbursement for Services unperformed.

## ARTICLE 11 - SUSPENSION

**11.1 Suspension of Services.** Company may suspend at any time and for any reason any part of Services by giving notice to Contractor specifying the part of Services to be suspended and the effective date of suspension. Suspension under this Article cannot last more than three months, and if it does, Company shall have the right to terminate under Article 12. Contractor shall cease work on said part of Services on the effective date of suspension, but shall continue to perform any part of Services not suspended. Notices given under this Sub-Article may be oral for any suspension that is reasonably expected to continue for no more than three (3) working days.

**11.2 Compensation.** For the part of Services suspended, compensation to Contractor during the period of suspension shall be in accordance with Exhibit B, limited however to:
    **a)** Contractor's employees whose retention on Services during the suspension has been authorized in advance by Company; and
    **b)** other items directly related to the suspended part of Services if authorized in advance by Company and subject to the other provisions of this Agreement that may reduce or suspend payment.

**11.3 Resumption.** Company may, at any time, authorize resumption of the suspended part of Services by notifying Contractor of the part of Services to be resumed and the effective date of suspension withdrawal. Services shall be promptly resumed by Contractor after receipt of such notice.

**11.4 Liability.** For Services suspended in accordance with this Article, Company shall not be liable for any costs, claims, damages or liabilities whatsoever of Contractor or Subcontractors, including, without limitation, Consequential Loss, punitive or exemplary damages.

## ARTICLE 12 - TERMINATION

**12.1 Termination.** By giving reasonable notice to Contractor specifying the Services to be terminated and the effective date of termination, Company may terminate this Agreement, in whole or in part:
    **a)** for a serious and substantial breach by Contractor of this Agreement; or

    **b)** if a direct competitor of Company acquires a controlling interest in Contractor, or

    **c)** if the Company ceases operations in the Guam or changes its operations such that the Services or

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 19 of 35

services substitutable for the Services are no longer required by the Company in the usual course of business in Guam.

Contractor shall cease work on said part of Services on the effective date of termination, but shall continue to perform any part of Services not terminated.

**12.2 Compensation.** If Services are terminated, either in whole or in part, in accordance with Sub-Article 12.1, Company with respect to such Services will pay Contractor, only for Services satisfactorily performed in accordance with this Agreement and obligations incurred prior to the effective date of termination and for such additional amounts directly related to work performed by Contractor in terminating, provided said work was authorized in advance by Company, and subject to the other provisions of this Agreement that may reduce or suspend payment. Such payment will be made to Contractor:

a) for non-lump sum and non-unit cost Services, according to Exhibit B,

b) for lump sum and unit-cost Services, the percentage of any lump sum or unit cost price (as the case may be) which represents the percentage of Services completed by Contractor, and

c) for direct costs that Contractor incurs in terminating Services under this Agreement, provided those costs were authorized in advance by Company and are properly supported by time sheets, invoices and the like.

Company shall have audit rights pursuant to Article 19 to verify the actual costs of work performed by Contractor in terminating.

**12.3 No Compensation.** Subject to Sub-article 12.2, in the event Services are terminated under this Agreement by reason of Contractor's failure to perform in accordance with Sub-Article 12.1, Company shall have no obligation to compensate Contractor under this Agreement.

**12.4 Liability.** For Services terminated in accordance with Sub-Article 12.1, Company shall not be liable for any costs, claims, damages or liabilities whatsoever of Contractor or Subcontractors, including, without limitation, Consequential Loss, punitive or exemplary damages.

## ARTICLE 13 - DISTRIBUTION OF RISK, RELEASE AND INDEMNITY

**13.1 Contractor's Responsibilities**

a) Contractor shall release and indemnify Company and its joint venturers and hold Company and its joint venturers harmless for loss of or damage, howsoever caused, to Contractor's or Subcontractor's tools and equipment and rented items which are used or intended for use in Services to be performed, and for any Consequential Loss sustained by Contractor or Subcontractors, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM COMPANY'S NEGLIGENCE.**

b) Contractor shall release and indemnify Company and its joint venturers and hold Company and its joint venturers harmless for loss of or damage, howsoever caused, to (i) Contractor's, Subcontractor's and Company's and its joint venturers' property intended to be incorporated into the Services and (ii) Company's and its joint venturers' property intended to be used in the Services, while all such property is in Contractor's care, custody or control until delivered to the Work Site, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM COMPANY'S NEGLIGENCE.**

c) Contractor shall release and indemnify Company and its joint venturers for loss of or damage to Company's and its joint venturers' existing property which is in reasonable proximity to the Work Site which results from the negligence of Contractor and/or for any resulting Consequential Loss sustained by Company and its joint venturers; however, Contractor's responsibility shall not exceed the amount recoverable by Contractor or its Subcontractors under the valid and collectible insurance carried by Contractor and Subcontractors, or the amount which would have been recoverable under that insurance if all conditions, requirements, and warranties imposed on the

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.    Page 7 of 84    Agreement No. SA-11551 OP
Transportation Services    Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 20 of 35

insured by the insurer are being or had been met. Company shall release Contractor and hold Contractor free and harmless from liability to Company for such loss or damage and/or for any resulting Consequential Loss sustained by Company exceeding the amounts so recovered, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM CONTRACTOR'S NEGLIGENCE**; however, Contractor's responsibility shall include the value of any deductible or self-insured retention applicable under that insurance.

d) Without limiting clause 13.1b), should loss of or damage to the Products or any parts of the Products occur whilst in the care, custody or control of the Contractor, the Contractor shall, as soon as practicable after receipt of a notice in writing from Company requiring it to do so, pay Company, as and by way of liquidated damages, an amount equal to:

    **(a)** Company's then current Wholesale Price for any lost or damaged Products; or

    **(b)** Subject to Company's obligation to mitigate the cost, the cost as determined by Company of any additional

    work to be performed as a result of any lost or damaged Products.

The Contractor acknowledges and agrees that the amount referred to above is a genuine pre-estimate of the loss which Company would suffer as a result of any loss of or damage to any Products.

e) **Meaning of "Products".** The term "Products" in this agreement shall include all products required to be carted in the Scope of Work."

f) **Meaning of "Wholesale Price".** The term "Wholesale Price" in this agreement is the value of the Products as determined by the price that the consigned Customer would be expected to pay for the Products, including freight differentials less any rebates and volume corrections.

## 13.2 Company's Responsibilities

a) Company shall release Contractor and hold Contractor harmless for loss of or damage, howsoever caused, to Company's property intended to be incorporated into or used in Services to be performed and located at the Work Site, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM CONTRACTOR'S NEGLIGENCE.**

b) Company will indemnify Contractor and hold Contractor harmless for loss of or damage, howsoever caused, to Contractor's property intended to be incorporated into the Services and located at the Work Site, **EVEN IF THE LOSS OR DAMAGE RESULTS FROM CONTRACTOR'S NEGLIGENCE.**

c) Notwithstanding the provisions of this Agreement to the contrary, Contractor shall also be responsible and not compensated by Company for:

    **(i)** any loss of money or securities in the care, custody or control of Contractor which are used or intended for use in performing Services,

    **(ii)** unexplained or mysterious disappearance of any property in Contractor's care, custody or control, or shortage of any property disclosed on taking inventory, or

    **(iii)** theft of property by Contractor, Subcontractors or their employees.

## 13.3 Indemnity For Third Party Damages.

Company and Contractor shall indemnify, defend and hold each other harmless from claims, demands and causes of action asserted against the indemnitee by any third party (including, without limitation, Contractor's and Company's employees) for personal injury, death or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence, Willful Misconduct or breach of statute. Where personal injury, death, or loss of or damage to property is the result of joint negligence, Gross Negligence, or Willful Misconduct of Company and Contractor, the indemnitor's duty of indemnification shall be in proportion to its allocable share of joint negligence, Gross Negligence or Willful Misconduct. If either party is strictly liable under Law, the other party's duty of indemnification shall be in the same proportion that its negligence, Gross Negligence, or Willful

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.    Page 8 of 84    Agreement No. SA-11551 OP
Transportation Services    Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 21 of 35

Misconduct contributed to the personal injury, death, or loss of or damage to property for which a party is strictly liable.

**13.4  Insurance and Indemnity Reformation.**  If it is judicially or statutorily determined that the insurance required hereunder or the indemnities voluntarily and mutually assumed hereunder exceed the maximum monetary limits permitted under applicable Law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such Law.

**13.5  Gross Negligence and Willful Misconduct.**  Notwithstanding anything to the contrary in this Agreement, each party shall bear full responsibility, without limit, for its Gross Negligence or Willful Misconduct attributable to its managerial and senior supervisory personnel and, in no event, will a party be required to release or indemnify the other party for Gross Negligence or Willful Misconduct attributable to the other party's managerial or senior supervisory personnel.

**13.6  Title.**  Title to all equipment, materials, supplies and structures procured by Contractor from third parties or supplied by Contractor and incorporated, or intended at the time of the procurement or supply to be incorporated, into the work product of Contractor's Services (excluding Contractor's tools, equipment and rented items) shall pass to Company upon payment therefor by Company or upon delivery to the Work Site whichever occurs earlier.

**13.7  Meaning of "Negligence".**  The term "negligence" in this Agreement shall include active or passive negligence.

## ARTICLE 14 - INSURANCE

**14.1  Minimum Insurance Requirements.**  Contractor shall carry and maintain in force at least the following insurances and amounts:

**a)  Workers' Compensation and Employers Liability**
For all its employees engaged in performing Services, workers' compensation and employers' liability insurance or similar social insurance in accordance with applicable Law which may be applicable to those employees.

**b)  Comprehensive General Liability**
Its normal and customary comprehensive general liability insurance coverage and policy limits or at least $10,000,000, whichever is greater, providing coverage for injury, death or property damage resulting from each occurrence.

**c)  Automobile Liability**
Automobile liability insurance covering owned, non-owned and rented automotive equipment providing at least $5,000,000 coverage for injury, death or property damage resulting from each accident.

**d)  Watercraft Liability.(where applicable)**  If watercraft are to be used in performing Services, marine protection and indemnity insurance including coverage for illness or death of seamen providing limits of at least $2,000,000 for each occurrence with Company named as an additional insured party.

**e)  Other.**  Any other insurance required by Law or any Additional Articles set out in Exhibit C.

**f)  Additional Insured and Waiver of Subrogation.**  Notwithstanding any provision of this Agreement to the contrary, Contractor's insurance policy(ies) described in this Sub-Article 14.1 (b), (c) and (d) above shall: (1) cover Company and Affiliates as additional insureds to the extent of Contractor's indemnification responsibilities set forth in Article 13; and (2) be primary as to all other policies (including any deductibles or self-insured retentions) and self insurance which may provide coverage. It is further agreed that Contractor and its insurer(s) providing coverage in this Sub-Article 14.1 shall waive all rights of subrogation and/or contribution against Company and Affiliates to the extent liabilities are assumed by Contractor.

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 22 of 35

g) **Insurance Supporting Indemnity.** It is further expressly agreed that Contractor's insurance shall apply to Contractor's indemnity and defense obligations under this Agreement.

h) **Self Insurance and Retentions.** It is expressly agreed that the above obligations of Contractor and/or its insurers shall apply to Contractor's self insured retentions and/or deductibles.

The parties further agree that the minimum insurance requirements as set forth above shall not limit or waive a party's legal or contractual responsibilities to the other party or others.

**14.2 Company Alternatives.** As an alternative and at Company's option and expense, Company may elect to furnish or to arrange for Contractor all or any part of the insurance required in this Article 14. If Company elects this alternative, it shall so state in a notice to Contractor, and the Contractor's compensation shall be reduced by an amount equal to the Contractor's cost of the insurance.

As an alternative and at Company's option and expense, Company may elect to furnish or to arrange for Contractor the insurance that Contractor carries, or to assume the responsibility, for all or any part of the property specified in Sub-Article 13.1 a) and 13.1 b). If Company elects this alternative, it shall so state in a notice to Contractor, and Contractor's compensation shall be reduced by an appropriate amount.

**14.3 Proof of Insurance and Changes.** Upon request by Company, Contractor shall have its insurance Contractor(s) furnish to requester certified copies of the required insurance policies and/or certificates of insurance specifying that no insurance shall be cancelled or materially changed while Services are in progress without thirty (30) calendar days prior written notice to the requester.

**14.4 Subcontractors' Insurance.** Contractor shall require any Subcontractors to maintain normal and customary insurance, but shall not require Subcontractors to carry insurance that would duplicate the coverage of the insurance carried by Contractor or Company or that would insure against liability waived by Company. Upon request by Company, Contractor shall have its Subcontractors furnish the same evidence of insurance required by Contractor.

**14.5 Commencement of Services.** Contractor and Subcontractors shall not begin Services until all of the insurance required of Contractor and its Subcontractors is in force and the necessary documents, if requested by Company, have been received by the requester.

## ARTICLE 15 - GOVERNING LAW AND DISPUTE RESOLUTION

**15.1 Governing Law.** The validity, interpretation and construction of this Agreement shall be governed by and construed in accordance with the laws of Guam, without reference to its principles of conflicts laws and without reference to the UN Convention on Contracts for the International Sale of Goods.

**15.2 Dispute Resolution.** Contractor and Company hereby acknowledge and submit to the non-exclusive jurisdiction of the courts of Guam.

## ARTICLE 16 - CONFIDENTIAL INFORMATION

**16.1 Contractor's Duty of Confidentiality.** Contractor shall hold in confidence all business and technical information that is made available to Contractor, directly or indirectly, by Company or developed or acquired by Contractor in performing Services under this Agreement (collectively "Confidential Information"), except:

a) information which is or becomes, without fault of Contractor, part of the public domain;

b) information which Contractor can show was received by Contractor from an independent third party that is under no obligation to Company or any Affiliate regarding the information;

c) information which Contractor can show was already in Contractor's possession at the time the information was made available to Contractor, directly or indirectly, from Company or any Affiliate;

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.      Page 10 of 84      Agreement No. SA-11551 OP
Transportation Services                                                          Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017      Document 77      Filed 11/30/2007      Page 23 of 35

Additionally, if so required by Law or valid legal or regulatory process, Contractor may disclose Confidential Information, but only following notice by Contractor to Company of the requirement to disclose and reasonable cooperation with any attempt by Company to maintain the confidentiality of such Confidential Information.

**16.2  Contractor's Use of Confidential Information.** Contractor shall not, without the prior written approval of Company as appropriate, use the Confidential Information which Contractor is required to keep confidential hereunder for any purpose other than the performance of Services under this Agreement.

**16.3  Contractor's Information.** Company shall have no obligation of confidence with respect to any information disclosed to Company by Contractor, and Company shall be free to use or disclose any or all of the information contained in any drawing, record or other documents to third parties without accounting to Contractor therefor; unless, however, information is specifically covered by a separate, written confidentiality agreement between Company, as applicable, and Contractor. In the absence of any such separate confidentiality agreement, Contractor shall not place any restrictive notices on any information, no matter the form of its recording, that Contractor provides to Company hereunder. If Contractor places any such restrictive notices on any drawing, record or other document, Company is hereby authorized to nullify, remove, or disregard those notices.

## ARTICLE 17 - OWNERSHIP OF INVENTIONS AND DOCUMENTS

**17.1  Ownership of Documents.** Contractor agrees that all tracings, designs, drawings, field notes, requisitions, purchase orders, specifications, computer programs (data files and other software in whatever form), and other documents or records developed by Contractor in connection with this Agreement ("Documents") shall be the sole property of Company. Contractor shall provide the original and all copies of the Documents to Company when Services are completed or earlier upon Company's written request. Contractor may, with the prior written approval of Company, retain one archival copy of Documents. Contractor shall keep any approved archival copy confidential and shall not use it directly or indirectly in providing any services to any other person or entity nor for any other purpose without first obtaining Company's prior written permission. Contractor hereby assigns, and shall require its employees to assign, the copyrights in all Documents to Company.

**17.2  Ownership of Inventions.** If Contractor or its personnel make any inventions, discoveries or improvements (collectively, "Inventions") patentable or unpatentable, resulting from Contractor's activities hereunder, Contractor shall promptly disclose those Inventions to Company in writing. Inventions covered in this Sub-Article shall include those conceived during the term of this Agreement between Company and Contractor and within one (1) year thereafter. Further, Contractor hereby assigns, and shall require its employees to assign, each such Invention to Company. Contractor also shall require its employees to execute such papers as Company requests in connection with any assignment and in connection with the acquisition of letters patent, U.S. and foreign, on any Inventions. Any compensation to which a Contractor's employee may be entitled by Law or otherwise for assigning Inventions shall be for Contractor's account.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.     Page 11 of 84                    Agreement No. SA-11551 OP
Transportation Services                                                                                                    Bulk Fuel Hauling - MOGI
Case 1:06-cv-00017     Document 77     Filed 11/30/2007     Page 24 of 35

**17.3 Infringement Notice and Indemnification.** If either Contractor or Company is made the subject of any claim or lawsuit based on the alleged infringement or misappropriation of any third-party patent, copyright, trade secret or other proprietary right by reason of any aspect of the materials or Services provided hereunder, it shall promptly notify the other party in writing. Company shall defend and indemnify Contractor against those claims or lawsuits based on the actual or alleged infringement or misappropriation of any such third-party right by Contractor only to the extent that Contractor's allegedly infringing or misappropriating conduct is expressly required by Company's specification or expressly required in writing by Company. This indemnity shall not extend to conduct of Contractor which is discretionary to Contractor. Contractor shall defend and indemnify Company against all other claims or lawsuits based on the actual or alleged infringement or misappropriation of any third-party right. The indemnities set forth in this Sub-Article shall include, without limitation, all penalties, awards, and judgments; all court and arbitration costs; legal costs; and other reasonable out-of-pocket costs incurred in connection with such claims or lawsuits. The indemnifying party shall have the right to control the defense of any litigation, and to settle or compromise all claims and lawsuits subject to its indemnity. However, the indemnifying party may not settle or compromise such claim or lawsuit without the written consent of the indemnified party if any settlement or compromise (a) requires the indemnified party to part with any property right or interest, assume any obligation or make any payment not indemnified, or (b) subjects the indemnified party to any injunction. Subject to the foregoing, the indemnified party shall have the right, at its option and expense, but not the obligation, to retain advisory counsel to represent its interests in defending any such claim or lawsuit.

If any action results in an injunction against Company with respect to the Services, materials or facilities provided under this Agreement, Contractor agrees that it shall, at its option and its sole expense, either (1) procure for Company the right to continue using the infringing subject matter, or (2) replace or modify the same so that it becomes non-infringing.

## ARTICLE 18 - USE OF TRADEMARK AND PUBLICITY

Contractor shall not, without the prior written consent of Company: (a) use the name or any trade name or registered trademark of Company or any Affiliate in any advertising or communications to the public in any format except as necessary to perform Services; (b) make publicity releases or announcements regarding this Agreement, Services rendered, or any related activities; or (c) take any photographs, video or other recordings of Company's property. Contractor shall cause its Subcontractors to comply with these requirements.

## ARTICLE 19 - AUDIT

**19.1** Contractor shall maintain and preserve, and shall cause its Subcontractors to maintain and preserve, in accordance with generally accepted accounting practices, accurate documentation and data (including but not limited to written and electronic records, books of account, correspondence, plans, permits, licenses, drawings, payroll records, memoranda, receipts, and documentation of related systems and controls) pertaining to the performance of Services under this Agreement, as well as any gift or entertainment expenses incurred by Contractor or its Subcontractors pertaining to the Services under this Agreement.

**19.2** At all reasonable times, Contractor shall permit and shall cause its Subcontractors to permit, employees and agents of Company to have access to its and their offices and work locations to examine, reproduce and retain copies of such documentation and data and to interview Contractors' and Subcontractors' personnel in connection therewith, as necessary for Company to verify and monitor (i) the accuracy and propriety of the price of Services and/or reimbursable costs, (ii) the existence and effectiveness of Contractors' and Subcontractors' business practices, and (iii) Contractors' compliance with the terms of this Agreement. Where Services are billable under fixed rates, Company's auditors shall have sufficient access to those rates to satisfy themselves that Services provided thereunder have not also been separately billed on some other basis (e.g., a reimbursable basis).

**19.3** The provisions of this Article shall be applicable during the term of this Agreement and for a period of three (3) years thereafter. If errors or deficiencies are identified by an audit or otherwise, Contractor shall take prompt corrective action and advise Company thereof.

## ARTICLE 20 - BUSINESS STANDARDS

**20.1 Business Standards.** Contractor shall establish and maintain precautions to prevent its employees, agents or representatives from making, receiving, providing, or offering substantial gifts, entertainment, payments, loans, or other consideration to employees, agents, or representatives of Company for the purpose of influencing those persons to act contrary to the best interests of Company. This obligation shall apply to the activities of the employees of Contractor and its Subcontractors in their relations with the employees of Company and their families and/or third parties arising from this Agreement.

**20.2 Accuracy of Records.** Contractor agrees that all financial settlements, billings, and reports rendered to Company or its representative shall reflect properly the facts about all activities and transactions handled for the account of Company, which data may be relied upon as being complete and accurate in any further recordings and reporting made by Company or its representatives for whatever purpose.

**20.3 Compliance With Law.** Contractor agrees and will secure agreement by its Subcontractors to comply with Law in performance under this Agreement. Notwithstanding anything in this Agreement to the contrary, no provision shall be interpreted or applied so as to require Company or Contractor to do, or refrain from doing, anything which would constitute a violation of, or result in a loss of economic benefit under, United States anti-boycott and other export laws and regulations.

**20.4 Business Ethics and Foreign Corrupt Practices Act.** For purposes of this Sub-Article, "Official" means and includes:

**a)** any officer or employee of any government or any department, agency or instrumentality (i.e., any legal entity controlled by the government) thereof, or any person acting in an official capacity on behalf of any such government, department, agency or instrumentality;

**b)** any political party;

**c)** any official of a political party;

**d)** any candidate for political office; or

**e)** any officer or employee of a Public International Organization (e.g., United Nations, IMF, World Bank).

Contractor represents that it has not offered, paid, promised to pay, authorized the payment of, or transferred, money or anything of value to an Official to secure any improper advantage or benefit in relation to the matters contemplated by this Agreement, either directly or indirectly through a third party. Without limiting the generality of Sub-Article 20.3, and in recognition of the principles of the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions which entered into force on February 15, 1999, and the United States Foreign Corrupt Practices Act, Contractor represents and agrees that it will not, directly or indirectly, in connection with this Agreement and the matters resulting therefrom, offer, pay, promise to pay, or authorize the giving of money or anything of value to an Official, or to any other person while knowing or being aware of a high probability that all or a portion of such money or thing of value will be offered, given or promised, directly or indirectly to an Official, for the purpose of influencing the act, decision or omission of such Official to obtain or retain business related to this Agreement, to direct business related to this Agreement to any person, or to obtain any improper advantage or benefit. Contractor represents that no Official or close relative of an Official has any direct or indirect ownership or other legal or beneficial interest in it or any of its affiliates, or in the contractual relationship established by this Agreement, and that no such Official serves as an officer, director, employee, or agent of Contractor. This representation shall be continuing throughout this Agreement. Contractor agrees to notify Company promptly and in writing of any changes in its direct or

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.     Page 13 of 84          Agreement No. SA-11551 OP
Transportation Services                                                               Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017     Document 77     Filed 11/30/2007     Page 26 of 35

indirect ownership in it or its affiliates that would make it or them an Official as defined in this Agreement. Contractor covenants that should Company notify it of any concerns that there has been a breach of the provisions of this Sub-Article, it shall cooperate in good faith with Company in determining whether such a breach has occurred.

If Company determines in its sole discretion that there has been such a breach or that Contractor has taken any action that would create a material risk of liability for Company under any applicable law, it shall be entitled to treat the breach as an event of default and to exercise any rights it may have under this Agreement upon the occurrence of an event of default, without regard to any waiting periods or cure periods specified in this Agreement. Contractor further agrees that, in connection with the Services performed under this Agreement and without limiting the requirements of Article 6 with respect to Subcontractors, it will require its Subcontractors to agree to and comply with contractual provisions substantially identical to those contained in this Sub-Article.

**20.5 Notice of Non-Compliance.** Contractor agrees to notify Company promptly upon discovery of an instance where Contractor fails to comply with this Article. If Company or Contractor discovers or is advised of any errors or exceptions related to invoicing for Services, Contractor and Company will together review the nature of the errors or exceptions and will agree the corrective action to be taken.

**20.6 Workplace Harassment.** Contractor, Contractor employees, agents and Subcontractors engaged by the Contractor shall be subject to the standards of conduct set forth in Company's "Harassment In The Workplace" policy while performing Services for or communicating with Company's employees, agents, customers and other contractors. A summary of Company's policy is included in a memorandum addressed to Contractor personnel performing Services for Company (Workplace Harassment Attachment to Exhibit A). Contractor will inform each of its employees, agents, and Subcontractors who perform, or will perform Services for Company of these expectations and provide each with a copy of that memorandum. Contractor will promptly notify Company contact for the applicable Services of any report or complaint of harassment of any violation of the standards of conduct. Contractor will cooperate with Company in any investigation Company may make, including making Contractor employees, agents and Subcontractors available for questioning by Company's designated investigators. Contractor agrees not to retaliate against anyone who reports an incident of harassment or who cooperates in any investigation of such incidents.

## ARTICLE 21 - ILLEGAL INFORMATION BROKERING

**21.1 Warranty and Representation.** Contractor and Company are aware of a practice (referred to in this Article as "Illegal Information Brokering") where certain parties approach contractors, subcontractors, vendors or other suppliers, and offer confidential information or illicit influence in order to obtain business through corruption of competitive bidding processes. Contractor recognizes that the practice of Illegal Information Brokering or any other corruption of the contract award process is not permitted by Company and Contractor warrants and represents that it has not and will not utilize Illegal Information Brokering in connection with this Agreement.

**21.2 Notification.** Contractor agrees that it will promptly notify Company's Procurement Services Manager or Controller if anyone approaches Contractor for the purpose of Illegal Information Brokering concerning this Agreement or any other related business interest of Company. Company undertakes that such notice and any related information provided by Contractor will be treated with the utmost discretion. Company also undertakes that it will handle this Agreement with extra security measures, as appropriate, in order to prevent any contractor, subcontractor or other supplier from gaining any unfair advantage subsequent to such notice.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.      Page 14 of 84      Agreement No. SA-11551 OP
Transportation Services                                                           Bulk Fuel Hauling - MOGI
Case 1:06-cv-00017      Document 77      Filed 11/30/2007      Page 27 of 35

## ARTICLE 22 - ASSIGNMENT OF AGREEMENT

Company may assign or novate this Agreement including all its rights and obligations hereunder to any Affiliate without the consent of Contractor. Contractor shall not assign this Agreement or any part hereof without Company's prior written approval, which approval shall not relieve Contractor of its obligations under this Agreement. Any assignment made by Contractor not in accordance with this Article shall be void.

## ARTICLE 23 - DESIGNATED REPRESENTATIVE AND NOTICES

### 23.1 Designated Representative

a) Company's Designated Representative, as set out in Appendix 1, or other such person as may be subsequently designated in writing by Company, shall have authority to act for Company with respect to all matters pertaining to this Agreement.

b) Contractor's Designated Representative, as set out in Appendix 1, or other such person as may be subsequently designated in writing by Contractor, shall have authority to act for Contractor with respect to all matters pertaining to this Agreement.

### 23.2 Notices

a) Notices required by this Agreement shall be in writing and shall be sent by hand or certified mail to Contractor or Company at the respective party's office address set forth in Appendix 1, to the attention of the respective Designated Representative:

b) The effective date of notice shall be the date the notice is received by the addressee or it reaches the office of the addressee, whichever is earlier.

## ARTICLE 24 - ALCOHOL AND DRUGS

24.1 Company reserves the right to require the Contractor to observe Company's Alcohol and Drugs Policy as advised by Company from time to time.

## ARTICLE 25 – SAFETY, HEALTH AND ENVIRONMENT

25.1 In performing the Services, Contractor shall familiarise itself and comply with, and shall ensure that Personnel are familiar with and comply with, Company's safety policy as set out below or as otherwise notified by Company to Contractor from time to time.

The safety and health of every employee of Company and of Company's contractors, customers and the public, is central to the way Company operates. Company's goal is to work in such a way that no-one is harmed. No task is so important that a way cannot be found to do it safely and with minimum risks to health.

Company is committed to working in a manner compatible with the balanced environmental and economic needs of the community. Company works continuously to improve its environmental performance. Company encourages concern and respect for the environment, emphasises each employee's responsibility in environmental performance and ensures appropriate operating practices.

25.2 Contractor shall provide to Company's Designated Representative prior to commencement of the Services, a copy of Contractor's safety, health and environment ("SHE") policy and procedures to be followed during the performance of the Services in compliance with the policy set out in Sub-article 25.1. Company shall not be obliged to give Contractor access to the Work Site until such safety, health and environment policy and procedures have been approved in writing by Company's Designated Representative.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.    Page 15 of 84    Agreement No. SA-11551 OP
Transportation Services    Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 28 of 35

**25.3** Contractor shall be responsible for the safety and health of Personnel in the course of performing the Services. Contractor will ensure that Personnel visiting a Work Site or any other Company owned or controlled site for the first time shall first attend an Company health and safety briefing and, if required by Company, Company safety, health and environment induction training. Contractor shall maintain a record of Personnel attending any such briefing or training which shall be available to Company's Designated Representative at any time and shall not allow any Personnel to work on a Work Site or any other Company owned or controlled site until it is satisfied that such Personnel have a thorough knowledge of Company's safety, health and environment requirements for the Services.

**25.4** Contractor shall be responsible for ensuring that Personnel working at the Work Site or any other Company owned or controlled site shall wear hard hats, protective boots, protective glasses, appropriate industrial clothing and hearing protection in accordance with Company's approved procedures and that these shall be correctly worn and be in good condition.

**25.5** In addition to its obligations under Sub-articles 25.1 and 25.3, Contractor shall be responsible for the safety and health of Personnel in providing the Services and, where requested by Company's Designated Representative, shall furnish for approval prior to the commencement of the Services, a copy of Contractor's safety, health and environment management system and procedures with which it will comply during the performance of the Services.

**25.6** The safety, health and environment management system and procedures of Contractor referred to in Subarticle 25.5 shall be of a standard satisfactory to Company and shall include (but shall not necessarily be limited to) the following:

    **a)** a structure of line management in order to provide for responsibility and accountability for safety, health and environment a publication made available to Company setting out the designated safety, health and environment responsibilities of Personnel within Contractor's corporate structure;

    **b)** established procedures or practices to ensure that all safety, health and environment instructions, rules or procedures are communicated to and followed by Personnel;

    **c)** a program of regular safety, health and environment inspections of the Work Site;

    **d)** a program of regular safety, health and environment meetings of all Personnel;

    **e)** a program for the orientation of new Personnel coming on to the Work Site;

    **f)** provision for the performance of safety, health and environment analyses where necessary prior to the commencement of special operations forming part of the Services;

    **g)** practices and procedures for the management of materials and equipment for the purpose of safeguarding the lives and health of Personnel; Company's personnel or any other person on or in the vicinity of the Work Site or whose lives or health may reasonably be foreseen to be at risk.

    **h)** provision for on-going education training and other appropriate measures (including the institution of a program of safety, health and environment recognition or employee awards in order to encourage proper performance of the Services) to ensure that all Personnel are familiar with and can readily put into practice emergency procedures on the Work Site;

    **i)** records of qualifications and training of Personnel;

    **j)** a training and competency assurance program for Personnel,

    **k)** procedures to ensure that all safety equipment and tools furnished by Contractor for the performance of the Services are readily accessible, comply with Company's specifications and safety, health and environmental requirements and that Personnel have had adequate training in their use;

    **l)** established procedures, where necessary, for the suspension of the Services in the event of the provisions of this Article 25 being unable to be fully complied with or where Company's Designated Representative directs Contractor to suspend the Services pursuant to Sub-article 25.11.

**25.7** Contractor shall report to Company's Designated Representative all safety, health and environment incidents, including occupational illness and "near miss" incidents, as defined by Company from time to time, which occur in the course of providing the Services within twenty-four (24) hours of their occurrence. Company shall provide Contractor with the appropriate forms and documentation for the reporting of incidents and Contractor shall comply with Company's investigation and reporting requirements in relation to such incidents. Each such incident report shall clearly identify all fundamental causes of that incident, the extent to which any such cause reveals inadequacies in Contractor's safety management system and procedures and any recommendations for remedies or procedures to prevent recurrence. Contractor shall bear the cost of any such remedy or procedure to the extent of Contractor's responsibility for any such incident.

**25.8** Contractor shall issue a monthly safety, health and environment report (by the third Working Day in each month and in the form set out in Company's "Safety Guidelines Manual" or as otherwise advised by Company) for the attention of Company's Designated Representative in respect of the preceding month. This report shall provide details of the manner in which Contractor has complied with its obligations under this Contract, including the following information:
   a) all safety, health and environment incidents that have occurred in the previous month, including "near miss" incidents and occupational illnesses;
   b) exposure hours, being the number of hours worked by Personnel in excess of five (5) Working Days (for each person) on a Work Site or any other Company supervised or controlled site; and
   c) details of attendance by Personnel at Company safety briefings or Company safety, health and environment induction training.
Contractor shall not be required to issue such a monthly report if there are no such incidents, the total number of exposure hours is less than forty (40) and if none of the Personnel attended or received any of the aforementioned safety briefings or induction training.

**25.9** Notwithstanding the provisions of Sub-articles 25.7 and 25.8 above, Contractor shall notify Company's Designated Representative immediately of any person either suffering any injury or illness or death while at a Work Site or any other Company supervised or controlled site. Notification shall be oral in the first instance, followed by a written report within twenty-four (24) hours of that notification giving complete details of the incident, including results of investigations into its cause and any recommendations for remedies or procedures to prevent recurrence.

**25.10** If during performance of the Services Company's Designated Representative is of the opinion that Contractor is:
   a) not conducting the Services in compliance with Company's safety, health and environment policies as defined in this Article 25, all applicable safety, health and environment laws, rules and regulations imposed by the Commonwealth, State or local governments or authorities, and all safety, health and environment rules, regulations and procedures furnished by Company to Contractor from time to time; or
   b) conducting the Services in such a way as to endanger the safety or health of Personnel or Company's personnel or Company's plant, equipment or materials, or any other person on or in the vicinity of the Work Site or whose lives or health may reasonably be foreseen to be at risk.
then Company's Designated Representative shall notify Contractor in writing of the breach of safety, health or environment involved and Contractor shall at its expense forthwith rectify the breach so notified.

**25.11** If Contractor does not rectify any breach of safety, health and environment requirements notified in accordance with Sub-article 25.10, then Contractor shall, upon being directed to do so by Company's Designated Representative, suspend the Services until such time as Contractor satisfies Company's Designated Representative that the provisions of this Article 25 will be fully complied with.

**25.12** During the periods of suspension referred to in Sub-article 25.11, Company shall not be required to make any payment whatsoever to Contractor.

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc. Page 17 of 84  Agreement No. SA-11551 OP
Transportation Services                 Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017  Document 77  Filed 11/30/2007  Page 30 of 35

**25.13** If Contractor fails to rectify any breach of safety, health and environment for which the Services have been suspended pursuant to Sub-article 25.11, or if Contractor's performance of the Services has involved recurring breaches of safety, health and environment, or if as a result of any such breach involving the Services there is an incident resulting in a fatality, or if environmental damage results from Contractor's failure to fulfil its obligations under Sub-articles 25.15, 25.16 or 25.17, then Company may terminate this Agreement and the Services forthwith without further obligation to Contractor. In such event, Company's liability shall be limited to payment for the Services performed by Contractor up to the time of termination.

**25.14** For at least the term of this Agreement, Contractor shall have in place a system for monitoring and documenting the relationship between the physical features and environment comprising the Work Site and the health of Personnel, including (but not necessarily limited to) the following:

**a)** matters relating to occupational health including occupational diseases and sick leave, as well as the provision of hearing tests, the logging of exposures and any follow-up or remedial action undertaken;

**b)** ensuring that Personnel are given both instructions on how to prevent or avoid potential health hazards in respect of the Services and specific training regarding risks and precautions associated with special working materials and operations relating to the Services; and

**c)** analysis of data concerning the health of Personnel and the working environment of the Work Site; and shall ensure that Personnel are given instructions on how to prevent or avoid potential health hazards in respect of the Services and specific training regarding risks and precautions associated with special working materials and operations relating to the Services.

Further, Contractor shall have a functional system for ensuring that:

**d)** Personnel are and remain medically fit to undertake the Services in the working environment of the Work Site and are not suffering from or indulging in substance abuse;

**e)** it maintains an alcohol and drug free Work Site, consistent with Company's Alcohol and Drug Use Guidelines for Contractors;

**f)** it identifies health hazards relating to each Work Site and takes appropriate action to protect Personnel from such hazards;

**g)** requirements of all relevant noise regulations are observed;

**h)** requirements of all regulations relating to dangerous goods and workplace hazardous substances and all policies, rules and objectives set out in Company's Workplace Substances Manual are observed;

**I)** Personnel do not smoke cigarettes, cigars or pipes on any Work Site except in an area which has been designated specifically to allow smoking;

**j)** it arranges for appropriate care of injured or ill Personnel, particularly if injured or ill in the course of performing the Services, including work-based rehabilitation;

**k)** Personnel comply at all times with all relevant occupational health and safety laws, regulations and codes of practice;

**l)** it consults with Company's Designated Representative if it has any concern or doubt as to its practical ability to meet Company's safety, health and environmental requirements.

**25.15** Contractor shall comply with all laws and regulations relating to the protection of the environment and in any event shall apply responsible environmental conservation standards and measures including (but not necessarily limited to) the implementation of procedures in respect of the following:

**a)** the tracking of materials potentially detrimental to the environment in order to ensure that all environmentally sensitive materials can be accounted for;

**b)** the storage and disposal of all hazardous wastes in accordance with applicable laws and regulations and the recording and audit of those used for hazardous waste disposal;

**c)** the periodic reporting to Company of data concerning long-term emissions which are not reported pursuant to Sub-article 25.16;

**d)** in environmentally sensitive areas, the establishment of targets and procedures to manage air,

water and noise pollution and initial and follow-up environmental surveys for new Contractor operations forming part of the Services; and

e) the development and implementation of strategies and work practices to ensure adequate protection against spills of petroleum (or hydrocarbons in any form) or chemicals.

25.16 Contractor shall during the course of performing the Services immediately report to Company any occurrences arising out of the performance or non-performance of the Services, or any other act or omission of Contractor, which have resulted or may result in environmental damage. That report shall include the following details:

a) nature of occurrence;
b) cause of occurrence;
c) remedial actions taken and planned to be taken by Contractor; and
d) measures taken by Contractor to prevent recurrence.

25.17 The cost of any rehabilitation associated with any damage reported, or which should have been reported, by Contractor to Company pursuant to Sub-article 25.16 shall be borne by Contractor. Contractor shall carry out, or cause to be carried out, any such rehabilitation, to a standard acceptable to Company.

## ARTICLE 26 - RIGHT OF REMOVAL

Contractor shall promptly remove from any Work Site any employee or agent of Contractor, any Subcontractor or any employee or agent of Subcontractor performing Services, as Company may for any reason designate. Contractor hereby releases and forever discharges and holds harmless Company from any costs, claims, losses, and damages of any kind whatsoever based on negligence, defamation, wrongful discharge/dismissal or otherwise which Contractor may suffer, sustain, pay or incur as the result of any removal and will indemnify, defend and hold harmless Company against any third party claims based on removals under this Article.

## ARTICLE 27 - FORCE MAJEURE

Except as specified in this Agreement, neither Company nor Contractor will be held to have defaulted on its contractual obligations to the extent that its performance has been hindered or prevented by force majeure. Force majeure means an unforeseeable, irresistible occurrence without the fault or negligence of the party invoking the force majeure and which such party is unable to prevent or provide against by the exercise of reasonable diligence. The party invoking the force majeure will (i) immediately notify the other party, (ii) make every effort to remedy the cause of non-performance, and (iii) perform the entirety of its obligations as soon as this cause has abated, the other party being released from its contractual obligations until such time as the cause has abated. Contractor shall not have the right to terminate this Agreement by reason of Company having invoked force majeure.

## ARTICLE 28 - CENTURY DATE COMPLIANCE WARRANTY

28.1 Contractor warrants that Services it provides under this Agreement are "Century Date Compliant." Services are deemed to be Century Date Compliant if:

a) no failure, error, interruption, reduction, or alteration of any sort in the performance and/or functionality of such Services will result, directly or indirectly, from any date change in the twentieth or twenty-first century, including the advent of the year 2000, or from the extra day occurring in any leap year;
b) all processing of date-related data by such Services will produce error-free results;
c) all date-related data (input and output) and results produced, directly or indirectly, by such Services shall include an indication of the century.

28.2 Contractor warrants that if Century Date Compliance of such Services is dependent in any manner on the associated use of a specific operating system, interface, hardware, software, or the like, or is otherwise

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 32 of 35

restricted in any manner, Contractor has notified Company in writing of such restriction prior to execution of this Agreement.

28.3 If such Services are not Century Date Compliant, Contractor shall notify Company in writing without delay and Contractor shall work diligently to correct such deficiency at no cost to Company and in accordance with a schedule satisfactory to Company.

28.4 Notwithstanding anything in this Agreement to the contrary, if Contractor is unable to comply with any provisions of this Article, Company may deem Contractor to have materially breached this Agreement and Company may immediately terminate this Agreement without any liability whatsoever to Contractor on Company's part.

## ARTICLE 29 - AMENDMENTS

Any amendment to the terms of this Agreement shall only be effective if made in writing and signed by Company and Contractor.

## ARTICLE 30 - PRECEDENCE

In the event of a conflict between any provisions of this Agreement, the terms in this Principal Document shall take precedence and govern over the terms in the Exhibits. Notwithstanding the foregoing, Additional Articles set out in Exhibit C (if any) that conflict with the terms of this Principal Document shall take precedence and govern over this Principal Document.

## ARTICLE 31 - MISCELLANEOUS

31.1 **Index - Headings.** The Index to this Agreement and headings and subheadings of Articles are used for convenience and ease of reference only and shall not be used to construe or interpret the provisions of this Agreement.

31.2 **Severability.** If any provision or portion of this Agreement incorporating this Agreement shall be adjudged invalid or unenforceable by a court of competent jurisdiction or by operation of Law, that provision or portion of this Agreement shall be deemed omitted and the remaining provisions shall remain in full force and effect.

31.3 **Waiver.** No waiver by a party of a right or default under this Agreement shall be effective unless in writing. No such waiver shall be deemed a waiver of any subsequent right or default of a similar nature or otherwise.

31.4 **Remedies Cumulative.** The remedies provided for in this Agreement are cumulative and shall be in addition to other remedies available at Law.

## ARTICLE 32 – ACCESS TO COMPUTING RESOURCES AND INFORMATION

Contractor shall ensure that its access to Company's or any Affiliate's (a) computer hardware, software, telecommunication facilities, and user identification codes ("Computing Resources"), and (b) data, messages, and transactions ("Information") will be solely for the performance of Services under this Agreement. Contractor shall further ensure that such access will be made only in the manner prescribed by this provision, only when such access is necessary for those Services and only by individuals who require access to perform the Services. Contractor will notify Company of each individual requiring access to perform Services and notify Company when an individual no longer requires access. In addition, Contractor shall ensure that each such individual at a minimum complies with the obligations of this Agreement and with any other security and control requirements provided to Contractor from time-to-

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.     Page 20 of 84     Agreement No. SA-11551 OP
Transportation Services                                                                                          Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017     Document 77     Filed 11/30/2007     Page 33 of 35

time by Company's representative.

In particular, without prior written approval from Company, no individual shall:

a) disclose or share use of any user access codes or passwords associated with the performance of Services;

b) access or attempt to access Computing Resources or Information that the individual is not authorized to access;

c) access, change, manipulate (e.g., create, read, execute, decrypt, destroy, modify, reverse engineer, or copy, etc.) or remove Computing Resources or Information that are not required to perform the Services;

d) load any programs or data onto Computing Resources; or

e) connect any computer modem to Computing Resources.

Where a remote connection to Computing Resources is provided to Contractor, Contractor shall comply with the following additional requirements:

a) Contractor shall notify Company of any changes or problems that may impact Computing Resources.

b) Contractor shall protect Computing Resources from theft, physical damage, and unauthorized access.

c) Contractor shall maintain a traceable one-to-one relationship between the computer and network address used to access Computing Resources and Information (e.g., no pooled IP addresses, etc.).

d) Contractor shall not monitor or record network traffic for the purpose of capturing Information (e.g., with network packet analyzers, line monitoring equipment, "sniffers," etc.). If Contractor captures or views Information incidental to performing Services, Contractor shall treat such Information in accordance with the terms of this Agreement.

e) Contractor shall use up-to-date measures to protect against transmission of viruses and malicious code to Computing Resources.

## ARTICLE 33 – ADDITIONAL REQUIREMENTS

**33.1 Management of Change**

a) If Contractor proposes to make any change (whether of a permanent, temporary or emergency nature) to or in connection with Personnel, the performance of the Services, the facilities constructed or the materials or equipment supplied pursuant to this Agreement, or any matter the subject of Article 25 or any other change which might materially affect the performance of this Agreement and in particular which may give rise to or increase any safety, health or environmental risk in connection with the Services, Contractor shall not proceed to implement that change until it has first been submitted for and received Company's review and approval.

b) Company shall notify Contractor of any change which it makes to its property, personnel or internal procedures or policies which might materially affect performance of the Services by Contractor or give rise to or increase any risk referred to in Sub-article 33.1 a).

c) Contractor shall ensure it has internal procedures in place for the implementation and management of any change the subject of this Sub-article 33.1 which are commensurate with and adequate to safeguard against any risk to health, safety or environment (as referred to in Article 25) arising out of or in connection with the performance of the Services.

d) Without limiting the generality of Sub-article 33.1 c), Contractor shall undertake or implement or, as appropriate, co-operate with and assist Company in undertaking and implementing the following:

(i) an assessment of the effects of a proposed change on safety, health and environment and on inter-related or associated facilities or operations;

(ii) planning for the implementation of that change, including adequate documentation of that change;

(iii) any special precautions required to maintain safe operations during the implementation of that change;

Case 1:06-cv-00017     Document 77     Filed 11/30/2007     Page 34 of 35

    **(iv)**    verification that the change has been implemented in accordance with Company's requirements before resuming operations or starting up any equipment and confirmation after such resumption or start-up that any effects of the change are as anticipated;

    **(v)**    a system and line of authority for addressing urgently required change;

    **(vi)**    the obtaining of required regulatory approvals or permits prior to implementation of any such change.

**33.2  Quality Assurance.** Contractor shall have a quality assurance program which meets the expectations of industry quality systems.

**33.3  Contractor Self Assessment and Monitoring Program.** Contractor and Company's Designated Representative shall meet on a regular basis (at a frequency to be agreed between the parties) to jointly establish plans ("the Goals") to meet or exceed the SHE requirements of this Agreement. Prior to each meeting, the Contractor shall prepare a written report "Self Assessment Report" which shall report on progress towards the Goals, and include any suggestions to revise the Goals. Company's Designated Representative shall prepare and issue notes of the meeting, including any agreed revisions to the Goals.

**33.4  Critical Equipment.** Contractor and Company's Designated Representative shall jointly determine which, if any, equipment supplied under the terms of this Agreement can be classed as "Critical Equipment". Contractor shall have procedures in place;

    **a)**    to ensure Critical Equipment is fit for purpose. These procedures must include pre-acceptance testing and/or inspection requirements to ensure the equipment meets contract specifications.

    **b)**    acceptable maintenance inspection and/or test programs for the Critical Equipment.

    **c)**    to report on these maintenance, inspection and/or test programs as part of the Self Assessment Report.

## ARTICLE 34 - ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between Contractor and Company, and it supersedes all prior negotiations, representations or agreements, either oral or written, related to the subject matter hereof.

IN WITNESS WHEREOF, the parties have duly executed this Agreement in duplicate originals as of the day and year first written above.

| Ambyth Shipping & Trading, Inc. | | Mobil Oil Guam Inc. |
|---|---|---|
| Signature: _Gregory R. Davio_ | Signature: | _A Cuasito_ |
| Name: GREGORY R. DAVIO | Name: | ANNE G. CUASITO |
| Title: VP | Title: | PROCUREMENT SUPERVISOR |
| Date: 9/29/04 | Date: | 9/30/04 |

Ambyth Shipping & Trading, Inc. dba Ambyth Trucking, Inc.    Page 22 of 84    Agreement No. SA-11551 OP
Transportation Services    Bulk Fuel Hauling - MOGI

Case 1:06-cv-00017    Document 77    Filed 11/30/2007    Page 35 of 35